## JOHN B. HOWELL *vs.* THE STATE OF MARYLAND.—*June Term* 1845.

By the act of the extra session of 1841, ch. 23, the interest or proportion in all ships or other vessels, whether in port or out of port, owned by persons resident of the State, are directed to be valued, as other property is directed, and charged according to such valuation with the public assessment of twenty cents in every hundred dollars of assessed value. HELD : that the tax was a constitutional and valid exercise of power by the State.

The objects intended to be secured by the act of Congress of 18th February 1793, for enrolling and licensing ships and vessels were, by excluding foreign vessels from a participation in the commerce which existed between the States, to cherish and promote the growth of our own marine, and guard, as far as possible, the revenue from the frauds and abuses to which it would be otherwise exposed.

The power of Congress to regulate the coasting trade, is plainly deducible from that clause of the constitution, which has granted to the national government the power to regulate commerce among the several States.

The term, commerce, includes navigation.

The *American* ownership of a vessel and her national character is ascertained, not by her license, but by her enrolment. It shows that the regular proof of ownership and character has been given.

The license authorises the owner of the vessel to carry on the coasting trade, and navigate the waters of the *United States*.

The right to tax is an incident of sovereignty, and is co-extensive with that to which it is incident. All subjects over which the sovereign power of the State extends, are objects of taxation, but those over which it does not extend, are upon the soundest principles exempt from taxation.

The sovereignty of a State extends to every thing which exists by its own authority, or is introduced by its permission ; but it does not extend to those means which are employed by Congress, to carry into execution powers conferred on that body by the people of the *United States*.

The decisions of the Supreme Court of the *United States* on constitutional questions are conclusive.

Property in ships and vessels was, before the adoption of the constitution of *the United States*, embraced by the taxing power of the State.

The power of taxation extends to all the people of the government, and embraces every thing which may be fairly considered as constituting a part of the mass of property within the State.

The interest in ships and vessels is private property ; and belonging to a citizen of *Maryland*, living within her territory, subject to her jurisdiction, protected by her laws, is a part of his capital in trade ; and like other property the subject of State taxation.

The States still hold all the powers which they originally possessed, except such as have been delegated to the *United States*, or prohibited to the States.

Howell *vs.* The State.—1845.

The general government has created a large class of subjects, without the reach of the taxing power of the States. The fiscal agents of the government; the army and navy; the judicature of the *United States*; the public ships; the national institutions and property are exempt from State taxation.

A restriction of a power created by implication, supposes that but for the implied limitation the power would have existed, and might have been exercised.

The institutions of the *United States*, though within the territory, are constructively without the local jurisdiction of the States in every respect and for every purpose including that of taxation.

Where there is a conflict between rights under the law of the local government and a law of Congress, the State law must yield to that which is supreme and paramount.

There is no incompatibility between the law taxing the interest in a vessel, and the license authorising it to carry on the coasting trade. The tax does not interfere with the right to navigate.

To render a State law unconstitutional, or extinguish a State power by implication, on the ground that it is repugnant to powers vested in the general government, the repugnancy must be clear, immediate, and direct; and not merely speculative, indirect, and contingent.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit*, docketted by consent to September term 1844, between the State as plaintiff, and the appellant as defendant, who pleaded non-assumpsit.

It was agreed, that the taxes charged in the following bills were regularly assessed upon the property of the defendant under the acts of the General Assembly of *Maryland*, so far forth as the formal valuation of the property, the imposition of the tax, and the presentation of the bills are concerned; and that the amounts, as charged, are the correct amounts for the respective years under the law, upon the property held by defendant in vessels. It is agreed, that the property so taxed, consists in vessels which navigate the seas, and are regularly registered and licensed as *American* vessels under the laws of Congress. It is agreed, that if the State of *Maryland* has a right to tax such property, that judgment shall be entered for the plaintiff. If not, that judgment shall be for defendant. All errors in the pleading waived.

The tax bills referred to above are in the form following, viz:

"3-131.   State Taxes, 1841, *Jno. B. Seidenstricker, Coll'r.,*
     *John B. Howell,*

                *To the State of Maryland, Dr.*
     To 87.   Int. in vessels, $56,000, State Tax, a 20 cents per
                 $100,    -        -        -        - $112 00
3-134.   State Taxes, 1842.
                 Int. in vessels, $56,000, State Tax, $25\frac{1}{2}$ cents pr.
                 $100,    -        -        -        - $142 80
                 Same for 1843,       -        -        -   142 80"

It is also agreed, that *Baltimore* county court shall enter
judgment *pro forma* in this case, for the State, reserving to the
defendant the right to appeal.

The judgment was entered accordingly, and the defendant
prosecuted this appeal.

It was agreed, in the appellate court, that the record should
be so amended as to show, that *John B. Howell* is a resident of
the city of *Baltimore,* and a citizen of the State of *Maryland,*
and that his interest in vessels taxed, arises upon vessels belong-
ing to the city of *Baltimore,* and there trading.

The cause was argued before ARCHER, C. J., DORSEY,
CHAMBERS, MAGRUDER, and MARTIN, Judges.

By REVERDY JOHNSON for the appellant, and
By MARSHALL and RICHARDSON, Att'y Gen'l, for the State.

MARTIN, J., delivered the opinion of this court.

The legislature of *Maryland,* on the 1st of April 1841,
passed an act, entitled: "An act for the general valuation and
assessment of property in the State, and to provide a tax to pay
the debts of the State." By the first section, it is provided,
that all real and personal property in the State; all chattels,
real and personal; all goods, wares and merchandizes, and
other stock in trade, at home, or not permanently located else-
where; *the interest or proportion in all ships or other vessels,
whether in port or out of port, owned by persons resident of
the State;* and various other descriptions of property, to which
it is not necessary for the purposes of this case to refer, should

be valued agreeably to the directions of the act, and charged according to such valuation, with the public assessment. The assessment imposed, is twenty cents in every hundred dollars worth of assessable property, according to its assessable valuation.

In conformity with the provisions of this act, an assessment was imposed on the appellant on account of his interest or proportion in certain vessels, amounting, in the year 1841, to the sum of $112, in the year 1842, to the sum of $142.80, and to the same sum in the year 1843.

The appellant having resisted the payment of this tax, an action to recover its amount was instituted against him by the State of *Maryland*, in *Baltimore* county court, and at the trial of the cause, the following statement of facts was agreed upon :

"That the taxes charged in the annexed bills were regularly assessed upon the property of the defendant, under the act of the General Assembly of *Maryland*, so far forth as the formal valuation of property, the imposition of the tax, and the presentation of the bills are concerned ; and that the amounts so charged are the correct amounts for the respective years, under the law, upon the property held by the defendant in vessels. It was agreed, that the property so taxed, consisted in vessels which navigate the seas, and are regularly registered and licensed as *American* vessels, under the laws of Congress." After the case reached the Court of Appeals, the record was amended for the purpose of introducing the further admission ; "that the appellant is a resident of the city of *Baltimore* and State of *Maryland*, and that his interest in the vessels taxed, arises upon vessels belonging to the city of *Baltimore*, and there trading."

The appellant has denied his liability to pay the tax imposed upon him under this act of Assembly, on the ground, that so much of that statute as professes to tax his interest in vessels duly licensed in conformity with the act of Congress of the 18th of February 1793, is incompatible with the privileges and immunities conferred by the license, and repugnant to the constitution and laws of the *United States*.

The act of Congress, under which the appellant claims exemption from the operation of the *Maryland* law, is that for

3     v.3

enrolling and licensing coasting vessels. It enacts, that no ships or vessels, except such as shall be enrolled and licensed, shall be deemed ships or vessels of the *United States*, entitled to the privilege of ships or vessels employed in the coasting trade. It also declares, that every ship or vessel engaged in the coasting trade, and not being so enrolled and licensed, shall pay the same fees and tonnage in every port of the *United States* at which she may arrive, as ships or vessels not belonging to a citizen of the *United States*; and if she has on board any articles of foreign growth or manufacture, or distilled spirits, other than sea stores, the ship or vessel shall be forfeited.

The objects intended to be accomplished by this act, were, by excluding foreign vessels from a a participation in the commerce which existed between the States, to cherish and promote the growth of our own marine, and guard, as far as possible, the revenue from the frauds and abuses to which it would otherwise be exposed. It is therefore clear, that though the power to regulate the coasting trade, by an act like that now under consideration, has not been expressly delegated to Congress, yet their right to legislate on this subject is plainly deducible from that clause in the constitution, which has granted to the national government the power to regulate commerce with foreign nations, and among the several States.

In the case of *Gibbons against Ogden*, 9 *Wheaton*, the Supreme Court determined, that the power to regulate commerce with foreign nations, and among the several States, extended to the regulation of navigation. They say, "if commerce does not include navigation, the government of the Union has no direct power over that subject, and can make no laws prescribing what shall constitute *American* vessels, or requiring that they shall be navigated by *American* seamen. Yet this power has been exercised from the commencement of the government, and has been exercised with the consent of all, and has been understood by all to be a commercial regulation. All *America* understands, and has uniformly understood, the word commerce to comprehend navigation. It was so understood when the constitution was framed. The power over commerce, including navigation, was one of the primary objects for

which the people of *America* adopted their government, and must have been contemplated in forming it. The convention must have used the word in that sense, because all have understood it in that sense, and the attempt to restrain it comes too late. The word used in the constitution, they affirm, comprehends, and has always been understood to comprehend navigation within its meaning ; and a power to regulate navigation, is as expressly granted as if it had been added to the word commerce.'' The validity of this act of Congress, as an auxiliary power, "necessary and proper" to carry into execution the expressly delegated power of regulating commerce with foreign nations, and among the several States, is therefore placed beyond controversy by the Supreme Court, and is not again to be questioned.

Assuming however, as too clear for dispute, that this act of Congress was a constitutional exercise of power ; the counsel for the State of *Maryland* have contended, that there is no color for the argument that seeks to exempt the owner of these vessels from the contributions to which he is liable, in common with the other citizens of the State, on the ground that the vessels were furnished with a coasting license by the collector of the port to which they belonged, because the only effect and object of this custom house document was to ascertain the ownership and character of the vessel to which it may have been granted, and that it gave no right to trade.

We are very clearly of opinion, that the counsel are mistaken in the view thus presented by them of the object and nature of the license. The *American* ownership of the vessel and her national character, is ascertained not by the license, but by the *enrolment*. It is the enrolment which shows that the regular proof of ownership and character has been given. This being accomplished, the owner becomes entitled to receive, and does receive from the collector of the port a *license*, the import and effect of which is, to authorise him to carry on the coasting trade, and navigate the waters of the *United States*.

In the case of *Gibbons and Ogden*, 9 *Wheat.* 1, the Supreme Court, after a particular examination of the various provisions of the act of Congress, regulating the coasting trade, and the

terms of the license, in answer to the argument presented for the plaintiff in error, that the sole purpose of the license was to confer the *American* character, say : "Notwithstanding the decided language of the license, it has been maintained, that it gives no right to trade, and that its sole purpose is to confer the *American* character. The answer given to this argument, that the *American* character is conferred by the enrolment, and not by the license, is, we think, founded too clearly into the words of the law, to require the support of any additional observations. The enrolment of vessels designed for the coasting trade, corresponds precisely with the registration of vessels designed for the foreign trade, and requires every circumstance that can constitute the *American* character. The license can be granted only to vessels already enrolled, if they be of the burden of twenty tons or upwards, and requires no circumstance essential to the *American* character. The object of the license, then, cannot be to ascertain the character of the vessel, but to do what it professes to do, that is, to give permission to a vessel already proved by her enrolment to be *American,* to carry on the coasting trade."

Conceding then, the truth of the propositions advanced by the counsel for the appellant: that the act of Congress, regulating the coasting trade, and providing for the registration, enrolment and licensing of vessels, is a constitutional exercise of the power conferred upon Congress to regulate commerce with foreign nations, and among the several States; that the license granted by the collector of the port to carry on the coasting trade in conformity with those acts, was not given for the purpose of conferring the *American* character, but was a legislative grant of the right of transit, and to trade upon and navigate the waters of the *United States;* and that any law of the State of *Maryland,* though passed in the execution of some one of its acknowledged powers, must yield when found in collision with a law of Congress, and the right conferred by that law, in the sense in which that term is to be understood in cases where there is an asserted conflict of powers, between the national and State Governments; we approach the interesting and important enquiry, whether the fact that these vessels were

licensed by the collector of the port of *Baltimore*, as prescribed by the act of Congress, exempts the owner of that property from the taxing power of the State, when fairly exerted for the purposes of revenue?

The taxing power of the State, as modified, and restrained by the constitution of the *United States*, was delineated with characteristic perspicuity and power by the late Chief Justice of the Supreme Court, in the case of *McCulloh against the State of Maryland*, decided at the February term, 1819, 4 *Wheat.*, 316. At page 428 of the opinion, he says: "Before we proceed to examine the argument advanced by the counsel for the State of *Maryland*, and subject it to the test of the constitution, we must be permitted to bestow a few considerations on the nature and extent of this original right of taxation, which is acknowledged to remain with the States. It is admitted, that the power of taxing the people and their property, is essential to the very existence of the government, and may be legitimately exercised on objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power, is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation. The people of the State, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of their constituents over their representatives to guard them against its abuse. But the means employed by the government of the Union have no such security, nor is the right of the State to tax them, sustained by the same theory. Those means are not given by the people of a particular State, not given by the constituents of the legislature, which claim the right to tax them, but by the people of all the States. They are given by all, for the benefit of all, and upon theory, should be subjected to that government only, which belongs to all."

The court say, "that it may be objected to the definition thus given, that the power of taxation is not confined to the people and property of the State. That it may be exercised upon every object brought within its jurisdiction. This is true. But to what source do we trace this right? It is obvious, that it is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a State extends, are objects of taxation, but those over which it does not extend, are upon the soundest principles, exempt from taxation. This proposition may almost be pronounced self-evident. The sovereignty of a State extends to every thing which exists by its own authority, or is introduced by its permission; but does it extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the *United States?* We think it demonstrable that it does not. Those powers are not given by the people of a single State. They are given by the people of the *United States,* to a government, whose laws, made in pursuance of the constitution, are declared to be supreme. Consequently the people of a single State cannot confer a sovereignty which will extend over them. If we measure the power of taxation residing in a State, by the extent of sovereignty which the people of a single State possess, and can confer on its government, we have an intelligible standard, applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of the State unimpaired; which leaves to a State the command of its resources, and which places beyond its reach, all those powers which are conferred by the people of the *United States* on the government of the Union, and all those means which are given for the purpose of carrying those powers into execution. We have a principle which is safe for the States, and safe for the Union. We are relieved as we ought to be, from clashing sovereignty, from interfering powers; from a repugnancy between a right in one government to pull down, what there is an acknowledged right in another to build up; from the incompatibility of a right in one government to destroy, what there is a right in another to preserve. We are not

driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power. The attempt to use it on the means employed by the government, in pursuance of the constitution, is itself an abuse, because it is the usurpation of a power which the people of a single State cannot give. We find then, on just theory, a total failure of this original right to tax the means employed by the government of the Union, for the execution of its powers. The right never existed, and the question whether it has been surrendered, cannot arise." Again, the learned court, at page 436, in explanation of the grounds on which the unconstitutionality of the law imposing a tax on the *Bank of the United States*, is placed; declare, "that the opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with other real property within the State, nor to a tax imposed on the interest which the citizens of *Maryland* may hold in this institution, in common with the other property of the same description throughout the State. But this is a tax on the operations of the bank, and is consequently a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution."

This is the reasoning, and such are doctrines of a court, whose decisions on questions of constitutional law, are to be received as conclusive, and we think, they clearly establish the validity of the *Maryland* statute.

It must be admitted, that property like that, which is now the subject of examination, was originally, and before the adoption of the *United States*, embraced by the taxing power of the State. All subjects were legitimate objects of taxation, over which the sovereign power of the State extended, because this power is an incident of sovereignty, and is co-extensive with that to which it is an incident. The power of taxation extends to all the people of the government, and embraces every thing which may be fairly considered as constituting a part of the mass of property within the State. This is a cardinal principle, on the preservation and application of which, the existence

of the State governments depends. In the case of the *Providence Bank*, 4 *Pet.*, 563, *Chief Justice Marshall* says: "that the power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. That it is an original principle which has its foundation in society itself. It is granted by all, for the benefit of all. It resides in the government as a part of itself."

The interest upon which the tax in this case was imposed, was the private property of a citizen of *Maryland*, living within her territory, subject to her jurisdiction, protected by her laws, and bound in common with other citizens, to contribute to her support. The vessels upon which the tax was laid, constituted a part of his capital employed in trade, like that of the merchant, manufacturer, or artizan. For the property itself, the State had provided by her laws, ample security and protection. It was taxed rateably, with other property produced within the State. The law in question, was passed by the legislature of *Maryland*, in good faith, to raise revenue for the high purpose of paying the debts of the State, from what was believed to be legitimate sources, and not to interfere with the regulations of commerce, or with any other power possessed by the general government. Is there then, any rule of law, or principle of construction, by which the State is to be held, as having surrendered her right to tax this property, as a portion of the private estate of one of her citizens, residing within the limits of her sovereignty and jurisdiction? We think there is not.

It is not necessary at this day to enter into an examination of the constitution, for the purpose of ascertaining the class of powers surrendered to the general government, and those retained by the States. It is established, that the States still hold all the powers which they originally possessed, except such as have been delegated to the *United States*, or prohibited to the States. This is the language of the tenth article of the amendments to the constitution. And it clearly appears from the papers of the *Federalist*, that the distinguished men, who participated so largely in the formation and adoption of the constitution, regarded this as its true interpretation, in the absence of the amendment referred to. The author of the thirty-second

number of that work, when discussing the proposed plan of the constitution, says: "As the plan of the constitution aims only at a partial union or consolidation, the State governments would clearly retain all the rights of sovereignty which they before had, and which were not by that act, exclusively delegated to the *United States*. This exclusive delegation, or rather alienation of State sovereignty, would only exist in three cases: where the constitution in express terms, granted an exclusive authority to the Union; where it granted in one instance, an authority to the Union, and in another, prohibited the States from exercising the like authority; and where it granted an authority to the Union, to which a similar authority in the States, would be absolutely and totally contradictory and repugnant." It is clear then, that unless the right of the State to tax property, like that which is now the subject of examination, has been alienated or surrendered, the power to do so, remains, and may be exercised.

Let the question before us be tried by this rule.

We are now considering the taxing power of the State. The only express prohibition to be found in the constitution of the *United States* on this power, is that contained in the tenth section of the first article, by which the States are prohibited, unless with the consent of Congress, from laying any imposts or duties on imports or exports; and are also, without such consent, prohibited from imposing any duty on tonnage. This is the only limitation upon the taxing power of the States, to be found in the constitution of the *United States*, and it has been asserted by very distinguished authority, and we think correctly, that this revenue power, as it originally existed, is subject to no other restraint. The authors of the *Federalist*, when examining the subject of the taxing power, in the thirty-third number, say: "The inference from the whole is, that the individual States would, under the proposed constitution, retain an independent and uncontrollable authority, to raise revenue to any extent of which they may stand in need, by every kind of taxation, except duties on imports and exports." By every kind of taxation, they mean, the right to tax all persons and property within the jurisdiction of the State, and as such, subject

4    v.3

to the taxing power, with the single exception of duties on imports and exports. The view thus presented, is strongly supported by the opinion of the Supreme Court, in the case of *McCulloh against the State of Maryland,* already referred to. It must be recollected, that in this case, the whole ground of the taxing power of the States, as modified, limited, or restrained by the constitution of the *United States,* was examined with almost unprecedented ability. It was directly affirmed by the counsel for the bank, that there were not only express, but implied limitations on the taxing power of the States. The incompetency of the State to tax the bank was rested, in part, on the principle, that this State power was confined and restrained by implied limitations, although an examination of the case will show, that the cause of the bank was placed on higher and firmer grounds. Upon this subject the Chief Justice, speaking for the court, says: "This opinion does not deprive the States of any of the resources which they originally possessed." Does not the learned Chief Justice intend to affirm the proposition stated by the *Federalist,* that the States retained authority to raise revenue by every kind of taxation, which they *originally* possessed, except duties on imports and exports?

It may be admitted, that after the States had surrendered to the general government the whole commercial power of the country, a restriction on their original right to impose duties on imports, would, if not expressly provided for, have been implied; because, as the imposition of duties on imports, is an instrument by which Congress may most effectually regulate commerce with foreign nations, the reservation of this authority by the States, would have been absolutely and directly incompatible with the commercial power granted to the national government. But this restriction was not left to implication. It was expressly inserted in the text of the constitution, and it may well be contended, that the prohibition on the taxing power of the States, was inserted *ex industria,* that this essential and vital power, about which the States manifested at all times so much solicitude, might be forever protected against implied and constructive limitations. When the States surrendered to the general government this rich source of revenue, it was not supposed

that their capacity to raise supplies, would be further abridged by implied limitations on the taxing power. Such a belief, if generally entertained, would perhaps have proved fatal to the constitution.

We are aware that there has been created by the general government, a large class of subjects, without the reach of the taxing power of the States. The fiscal agents of the government, the army and navy, the judicature of the United States, the public ships, the national institutions and property, are exempt from State taxation. Why? Not upon the ground, that the States were restrained by implication, from taxing the national institutions and property. A restriction created by implication, supposes, that but for the implied limitation, the power would have existed, and might have been exercised. But, because those subjects, in the nature of things, never could have become objects for the taxing power of the States. They constituted no part of the resources of which the States were originally possessed. Having been created by the national government, they could not have been liable to taxation by the States.

It is also a very clear proposition, that the institutions of the *United States*, though within the territory, are constructively without the local jurisdiction of the States, in every respect, and for every purpose, including that of taxation. It is upon this ground, that the institutions of the *United States*, the judicature, the custom house, the public ships, are safely placed beyond the reach of the taxing power of the States, and not because of any implied restriction on that power. In the same class, may be placed imported goods in the public warehouses, on which the duties have not been paid. Property of this description, may be within the territorial limits of the State, but not within its jurisdiction, so as to subject it to the taxing power.

It cannot be maintained, that the doctrine of implied limitations on the taxing power of the States, is established by the case of *Brown against The State of Maryland*, 12 *Wheat.* 419. The court considered the law of *Maryland*, requiring the importer of foreign articles to take out a license from the

State before he should be permitted to sell a bale or package, as a tax on imports; and therefore, within the express prohibition contained in the *Constitution of the United States*. On the contrary, when the Supreme Court have been required to speak upon this subject, they have discountenanced the notion of implied restrictions and limitations on the taxing power of the States. In the case of *The Providence Bank against Billings and Pittman,* they say : "That the taxing power is of vital importance; that it is essential to the existence of government; are truths which it cannot be necessary to re-affirm. They are acknowledged and asserted by all. It would seem, that the relinquishment of such a power is never to be assumed."

Waiving, however, this view, and assuming that there are cases, in which the taxing power of the States may be restrained and defeated, by implication; upon what principle is it, in this aspect of the case, that the State is denied the right to impose the tax, now under consideration?

The counsel for the appellant, contends, that the right claimed by the State to tax the appellant's interest in these vessels, is incompatible with the privileges conferred upon him by the license; and, that this being so, the law of *Maryland* must fall on the well established principle, that where there is a conflict, between rights under the law of the local government and a law of Congress, the State law must yield to that which is supreme and paramount.

An answer to the argument presented on this branch of the case, is: that there is, in fact, no incompatibility between the law taxing the interest, which the appellant possesses in these vessels, and the license, authorising them to be employed in the coasting trade.

It is, in all its features, unlike the case of *Gibbons against Ogden,* to which it was assimilated in the argument. In that case, the grant by the legislature of *New York* to *Livingston* and *Fulton* of the exclusive navigation of the waters within the limits of the State, with boats moved by fire or steam, operated as a practical denial of the right conferred on the owner of the steam boat *Bellona,* by her coasting license, to navigate

the same waters. Between the right claimed under the State grant, and the right secured to *Gibbons*, by the laws of the *United States*, there was a direct and actual conflict. Under such circumstances, the Supreme Court could not do otherwise than annul the State law.

But no such collision can result from the tax imposed by the statute of *Maryland*. The State does not pretend to interfere with the right of the appellant freely to navigate, with their vessels, the waters of the *United States*, or require him, as in the case of *Brown against the State of Maryland*, to obtain from the State a license, as a qualification for the exercise of a privilege to which he had become already entitled by a law of Congress.

It has, however, been contended by the counsel for the appellant, that a right to tax, involves the power to prohibit and destroy; that *Maryland* may hereafter determine to banish from her waters all trade; that to accomplish this purpose she may change her fundamental law; and that this power of taxation, if tolerated, may be so abused by her, and diverted from its lawful purpose, as to be directed against our marine, and those branches of commerce and navigation, in the prosperity of which the whole country is concerned, and which have been placed exclusively under the protection of the national government.

But an answer to be given to this argument, is, that to render a State law unconstitutional, or extinguish a State power, by implication, on the ground that it is repugnant to powers vested in the General Government, the repugnancy must be clear, immediate and direct; and not that which is merely speculative, indirect and contingent.

In the case of *McCulloh against the State of Maryland*, the Chief Justice of the Supreme Court expressly stated, that the opinion did not extend to a tax imposed on the interest which the citizens of *Maryland* held in the *Bank of the United States*, in common with other property of the same description throughout the State. And if it be true, as there determined, that the proprietory interest held by the citizens of *Maryland*, in the bank stock of the *Bank of the United States*, could not

be withdrawn from the taxing power of the State, it must follow, that the State retains the power to subject to taxation the interest which the appellant has in these vessels.

With much more reason could it have been maintained, that a tax upon the interest of the stockholder was repugnant to the act of Congress drawn in question, in that case, than that this tax was repugnant to the act of Congress regulating the coasting trade. A tax upon the proprietory interest of the stockholder in the *Bank of the United States*, would operate indirectly upon an instrument created by the national government for the purpose of carrying into execution its acknowledged powers. But this, it was held, could produce no constitutional repugnancy. Unless the repugnancy between the operation of the State law, and the right claimed under the law of Congress is direct and irreconcilable, the State power must be upheld.

The true rule on this subject is to be found in the *Federalist*. It is there stated in the thirty-second number: "That it is not a mere possibility of inconvenience in the exercise of powers, but an immediate and constitutional repugnancy, that can, by implication, alienate or extinguish a pre-existing right of sovereignty."

The distinction is between an immediate, direct, and necessary conflict of powers, where power stands arrayed against power, as in the case of *Gibbons and Ogden;* and one that is merely possible, and often occurs in our form of government, where powers, harmonious in themselves, are seen operating upon the same subject.

We can perceive no repugnancy, between the law of *Maryland*, imposing a tax upon this property, and the acts of Congress, under which an exemption from it has been claimed by the appellant.

We think, therefore, that the imposition of this tax was a constitutional exercise of the taxing power of the State, and that the judgment of the county court must be affirmed.

JUDGMENT AFFIRMED.