THE PEOPLE, *ex rel.* The United States and Brazil Steamship Company, *vs.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK.

A steamship company, incorporated under the laws of New York, for the transportation of passengers and freight between New York and Brazil, whose capital is invested in vessels employed for that purpose, and whose office is located in the city of New York, is not exempted from state taxation on its capital, under the constitution of the United States, on the ground that the whole amount is invested in steamships engaged in foreign commerce and in carrying the mails under a contract with the United States. Such an assessment in no way interferes with the power of congress to regulate commerce, either with foreign countries or between the states.

THE relators were incorporated under a statute of the state of New York, for the transportation of passengers and of freight between New York and Brazil. The capital of the company is invested in steamships employed for this purpose. The office of the company was located in the city of New York. The tax commissioners assessed the relators on the whole amount of their capital stock. The relators claimed to be exempt from taxation on their capital, because the whole amount was invested in steamships engaged in foreign commerce, and in carrying the mails under contract with the United States. The case was brought before the court on a certiorari to review the assessment.

*C. A. Rapello,* for the relators. I. The capital of the relators consisting wholly of its steamships, a state tax cannot legally be assessed upon such capital if the ships themselves are exempt from state taxation. (*Bank of Commerce Tax,* 2 *Black,* 260. *Bank Tax Case,* 2 *Wallace,* 200, 210.).

II. The ships of the relators are exempt from state taxation. 1st. Because they are employed in foreign commerce. 2d. Because they are employed by the government of the United States in transporting the mails. 3d. By reason of the provision of the constitution of the U. S. (*Art.* 1, § 10, *subd.* 2,) which prohibits the states from laying any duty on tonnage. 4th. By reason of the provision of the constitution

of the U. S. (*Art.* 1, § 9, *subd.* 5,) which declares that no preference shall be given by any regulations of commerce or revenue to the ports of one state over those of another.

III. The exemption claimed by reason of the ships being employed in foreign commerce rests upon the provision of the constitution giving to congress the power to regulate commerce with foreign nations, etc.

(*a.*) This power is *exclusively* vested in congress ; consequently no state legislature can operate upon that subject. (*Gibbons* v. *Ogden*, 9 *Wheat.* 198. *Brown* v. *State of Maryland*, 12 *id.* 419. *Passenger cases*, 7 *How.* 400, 411.)

(*b.*) The taxation of the instruments employed in foreign commerce is a regulation of commerce. (*The People* v. *Brooks*, 4 *Denio*, 476.) " Passengers, as was said in the case of the *City of New York* v. *Miln*, (11 *Peters*, 136,) are not the subject of commerce, nor are they like the officers and crew of a vessel, indispensable agents of navigation. A tax on the former may not therefore be in any sense a regulation of commerce, although a law imposing a similar burthen on the officers and crew might well be regarded as of that character." (4 *Denio*, 476.) " The word 'commerce,' as used in this connection, includes navigation, and embraces ships and vessels as the instruments of intercourse and trade, as well as the officers and seamen who navigate and control them. The power of regulation vested in congress extends to all these subjects." (*Id.* *Gibbons* v. *Ogden*, 9 *Wheat.* 189 *et seq.*) In " the passenger cases," subsequently decided, (7 *How.* 283,) it was held that a state tax on passengers was equally invalid with a tax on officers and crews of vessels engaged in foreign trade ; and notwithstanding the dicta of some of the judges to the contrary, the reasoning by which this decision is supported shows that a tax on the vessel itself, whether owned by a citizen of the state or not, would be equally invalid. That such is the effect of the decision is conceded by Chief Justice Taney, who delivered a dissenting opinion in that case. Mr. Justice Wayne, at page 412, states the conclu-

sions on which the majority of the court agree, among which are: 2. That the states of the Union cannot tax the commerce of the United States. (*P.* 414.) That the power in congress to regulate commerce, &c. includes navigation upon the high seas, and that any tax by a state in any way affecting the right of navigation, or subjecting the exercise of the right to a condition, is contrary to the aforesaid grant. In the opinion of Mr. Justice Catron, the objection to the law is placed upon the distinct ground that it imposes taxes on vessels through their masters, (*see pp.* 444, 445;) and at page 446 he says : "If the first part of the law is void because it lays a duty upon the vessel," &c. And at p. 447: "If the state taxes the vessel directly by a tonnage duty, or indirectly by taxing the master and crew, &c. &c. she assumes to exercise the jurisdiction of congress, and to regulate navigation engaged in foreign commerce." Mr. Justice Grier takes the same view ; and although he confines his remarks to vessels not owned by the citizens of the state, his reasoning is equally applicable to vessels owned by citizens. (*See pages* 458, 459.) The law was held unconstitutional as to all vessels. (*Page* 412.) If the states can lay any tax upon vessels employed in foreign commerce, the power is unlimited. The states can tax them to any extent, even to destruction, and may drive the commerce of the country from the ocean. "The power to tax involves the power to destroy." (*Per Ch. J. Marshall in McCulloch v. The State of Maryland,* 4 *Wheat.* 316.)

(*c.*) The power of imposing taxes upon such vessels, if it exists, being unlimited, can be exercised by the states in any form and to any extent ; and may be used in direct hostility to the policy of congress in those regulations of commerce which relate to the impositions upon ships and vessels, and make discriminations between vessels based upon the nationality of their crews, &c. place of building vessels, &c. (*See acts concerning navigation collected in Brightly's Digest, p.* 651, *&c.; Act of* 20*th July,* 1790 ; *Act of March* 1,

1817 ; *Act of May* 31, 1830.) If the states have power to impose taxes on such vessels they may nullify all these discriminating regulations. Any tax not based upon the same discriminations does nullify them *pro tanto.* "The power of a state to tax cannot be used to obstruct or defeat the power of congress to regulate commerce." (12 *Wheat.* 463, 448, 449.)

IV. The vessels in question, being employed by the government in carrying the mails, are, for that reason exempt from taxation. The states cannot tax those means which are employed by the government of the United States in carrying out the powers vested in it by the constitution. (*Weston* v. *City of Charleston,* 2 *Peters,* 467. *Bank of Commerce case,* 2 *Black,* 260. *McCullough* v. *State of Maryland,* 4 *Wheat.* 425. *Osborn* v. *Bank of U. S.,* 9 *Wheat.* 738.)

V. The provisions of the constitution of the United States which prohibits the states from laying any duty on tonnage, prohibits them from laying any tax which shall have the same effect. The tax upon the value of the vessel is as objectionable as if it were measured by her tonnage. "It is, in fact, a duty on the vessel, not measured by her tonnage, it is true, but producing a like result by merely changing the ratio." (*Opinion of Grier, J.,* 7 *How.* 458.) It is true that the learned judge speaks subsequently of vessels not owned by citizens of the state, but there is no distinction in this respect admissible. A state has no more power to lay duties on domestic than on foreign vessels.

VI. The provisions of subdivision 5, § 9, article 1 of the constitution, show that it was intended that the ports of one state should have no advantages over those of another. The ships belonging to New York have the right to be put upon an equal footing with those of the other ports of the United States. But if they are subjected to the enormous taxes imposed upon the inhabitants of this city, it is evident that they cannot compete on equal terms with foreign vessels, or those owned out of the port of New York and not subject to

a like amount of taxation. All the discriminations made by congress in the laws respecting tonnage, for the purpose of favoring domestic vessels, or vessels manned by American crews, are rendered entirely futile, and by means of state taxation greater burthens are cast upon domestic vessels than upon foreign vessels, which are exempted from state taxation. This is even a greater mischief than it would be to allow the states to impose tonnage duties on all vessels, domestic and foreign.

*Richard O'Gorman,* for the respondents. 1. The relators are not entitled to the exemption claimed. (*a.*) The power of taxation is a sovereign power, and is as necessary to the existence of the states and the due administration of their government as it is essential to the existence and administration of the national government. Accordingly, this power of taxation has ever been recognized as residing concurrently in the state and national governments, and without other limitations in either than those imposed by the national constitution, and those arising from the structure of the government. (*Gibbons* v. *Ogden,* 9 *Wheaton,* 199. *McCulloch* v. *State of Maryland,* 4 *Wheaton,* 431.) The only express constitutional limitation upon the taxing power of the states is that in which they are prohibited from laying any imposts or duties on imports or exports. (*Const. art.* 1, § 10, *subdivision* 2.) The other limitations upon this power arise from the complex system of the federal government, and have their origin in that provision of the federal constitution which declares that the constitution and laws of the United States made in pursuance thereof shall be the *supreme law of the land.* (*Const. art.* 6, *sub.* 2.) It will therefore be conceded that whenever the exercise of the taxing power by the states has been found to interfere with the free and full enjoyment of the powers granted by the constitution to the federal government, or to obstruct the due administration of those powers, or to impede the execution of the constitutional laws of con-

gress, the exercise of that taxing power has been denied to the states as repugnant to the declared supremacy of the federal constitution and laws. (*McCulloch* v. *State of Maryland,* 4 *Wheaton,* 316. *Gibbons* v. *Ogden,* 9 *Wheaton,* 199. *Weston* v. *City Council of Charleston,* 2 *Peters,* 449. *Osborn* v. *Bank of the United States,* 9 *Wheaton,* 738.) It is upon this last named limitation upon the authority of the states to exercise the taxing power that the relators attempt to ground their objection to the assessment imposed upon their capital, and rest their claim to exemption from taxation. The facts upon which the relators rely as bringing them within the principles of the authorities establishing the limitation last noticed are stated in their petition as follows : (1.) That the steamships in which their capital is invested are subject to taxation by congress. (2.) That they are engaged in foreign commerce and in carrying the United States mails. But these facts constitute no valid claim to exemption from state taxation. The power of taxation being concurrent in the states and national government, it is manifest that the exercise of the power by the one does not impair the right of the other. Each may tax at the same time, and select the same subjects for taxation. (*Gibbons* v. *Ogden, supra.*)

II. The fact that the relators' ships are engaged in foreign commerce does not establish the right to the exemption claimed. The claim of the relators is predicated upon the presumption that the taxation complained of interferes with the power granted to congress by the eighth section of the first article of the constitution. This section provides that congress shall have power to regulate commerce with foreign nations, and among the several states and with the Indian tribes. It is not denied but that this grant of power to congress is exclusive of any right in the states to exercise that same power when its exercise by the state would interfere with that of congress. But the taxation of the relators is not in any light an interference with the exercise of this power by congress. There is no such interference. The statute by authority of

The People *v.* Commissioners of Taxes, &c.

which the assessment of the relators was imposed does not assume or pretend to *regulate commerce with foreign nations,* but contents itself with providing for the exercise of an entirely distinct and sovereign power—that of taxation—a power which has been shown to be concurrent in the state and national government. (*Gibbons* v. *Ogden,* 9 *Wheaton, p.* 10.) In this case, Marshall, Ch. J. says : " There is no analogy between the power of taxation and the power of regulating commerce." If the powers of taxation and regulation of commerce are thus distinct and separate, it is manifest that the state, in the exercise of the former, neither usurps nor impedes the right of congress to exercise the latter. There is no act of congress which exempts steamships engaged in foreign commerce from taxation. The state, therefore, in taxing the relators, cannot be said to have obstructed the execution of any law of the United States. The act in pursuance of which the relators were taxed does not challenge the supremacy of the federal constitution, nor that of any law passed under it, either by usurping the powers granted by the one or by impeding the execution of the other. The relators, therefore, have failed to bring themselves within any of the limitations upon the taxing power of the state. The right of the state to tax ships engaged in foreign commerce and in carrying the mails has, however, been affirmed by the very tribunal upon whose decision the relators rely to escape such taxation. (*Passengers' Case,* 7 *How.* 283.)

In this case, Justice McLean says : " A state court cannot regulate foreign commerce ; but it may do many things which more or less affect it. It may tax a ship or other vessel used in commerce, the same as other property owned by its citizens. A state may tax stages in which the mail is transported ; but that does not regulate the conveyance of the mail any more than taxing a ship regulates commerce ; but, yet, in both instances, the tax on the property, in some degree, affects its use." There could not be a more positive affirmation of the right of the states to tax ships engaged in foreign commerce,

or a more emphatic denial of the relators' claim to exemption from taxation based upon the fact that their property is employed in the transportation of the United States mail, than is contained in the quotation from the opinion of Justice McLean. A moment's consideration of the consequences which would inevitably result from the opposite doctrine will seem to confirm the wisdom of that eminent jurist's opinion. The same section of the constitution which clothes congress with the power to regulate foreign commerce, also grants the like power with respect to commerce among the several states. If the property engaged in *foreign commerce* is entitled to exemption, property engaged in *domestic commerce*, or commerce between the several states, is entitled to like exemption. The power to regulate the one is not more distinctly conferred upon congress than is the power to regulate the other, and any exemption which applies to the one must apply equally to the other. If, then, the relators' claim is valid, there is not a ship owner, railroad corporation, or express company in the state, that is not exempt from taxation. And every person and corporation engaged in conveying the mails is, upon the same principle, entitled to a like exemption. The only case which even hints in favor of the position assumed by the relators is that of *Brown* v. *State of Maryland,* (12 *Wheaton,* 419.) But that case is not analogous to the one at bar. No *special tax* has been imposed upon the relators *beeause of their being engaged in foreign commerce ;* the only demand made is, that property which, in contemplation of law is located within the limits of the state, shall pay its due proportion in support of the government, ascertained by the operation of a law which makes no discrimination between the property of the relators and that of the other inhabitants of the state.

III. The power of the federal government to regulate commerce is not exclusive. (*Wilson* v. *The Blackbird Creek. Marsh Co.,* 2 *Peters,* 250. *Gilman* v. *Philadelphia,* 3 *Wallace,* 715.)

(*a.*) In the case last cited, the following propositions are

The People *v.* Commissioners of Taxes, &c.

affirmed : " The states may exercise concurrent or independent power in all cases but three.

" 1. When the power is lodged exclusively in the federal constitution. 2. When it is given to the United States and prohibited to the states. 3. When, from the nature and subjects of the power, it must necessarily be exercised by the federal government exclusively. The power here in question does not, in our judgment, fall within either of these exceptions." The only question involved in the case, was the power to regulate commerce. If, then, the tax assessed upon the relators amounted to a regulation of commerce, it would not be invalid unless it interfered with some regulation previously established by congress. There is no such conflict, and, for that reason, the claim of the relators must fail.

IV. The claim of the relators for exemption from taxation because the ships are engaged in carrying the United States mails, cannot be seriously maintained. It has been expressly repudiated in some of the decisions above cited, and has no foundation in law.

*By the Court,* INGRAHAM, J. I am at a loss to see how the taxation of this company can in any sense be deemed an interference with the power to regulate commerce with foreign nations. It imposes no rules or regulations on commerce, and in no way interferes with the transportation of freight or passengers. It acts, not upon commerce or its relations with foreign countries, but upon the property of the company, in the same manner that a tax on the personal property of the individual is raised upon a valuation of his personal estate, whether such estate consists of ships, or railroad stocks or money. The ground upon which the Supreme Court held that acts of the state, imposing a specific tax upon officers or seamen of a vessel were invalid, was that it interfered with the power to regulate commerce with foreign nations. Following this decision in *City of New York* v. *Miln,* (11 *Peters,* 136,) and the *Passenger cases,* (7 *How.* 283,) the utmost

that could be claimed for it would be that the state could not interpose a specific tax on vessels arriving from foreign ports, whether in the form of a tax on vessels specifically, or on the officers or crew of the vessel, or as a tonnage duty, or in any other manner which would interfere with the free passage of such vessels from one place to another. Beyond that, I do not understand the rule and decisions to apply; and the right to tax an inhabitant of the state generally upon his personal property is not in any manner restrained because some part of such property is invested in ships or steamers. The same section which gives congress power to regulate commerce with foreign nations, also includes the commerce with the states, and if the relators are right in claiming that this provision exempts from taxation all property engaged in foreign commerce, it would also free from state taxation all the property of railroads running from one state to another.

It would go even farther than that, in restraining state power, for it would prevent a state court from compelling the payment of debts due by the owners of such vessels or stocks by the application of such property to such a purpose.

The same views are applicable to the other ground taken by the relators, in regard to contracts for carrying the mails of the United States.

I am not willing to adopt the construction contended for by the relators. The assessment complained of in no way interferes with the power of congress to regulate commerce either with foreign countries or between the states, and no good cause is shown why we should interfere with the assessment as made by the commissioners of taxes.

Judgment for the respondents.

[NEW YORK GENERAL TERM, November 5, 1866. *Leonard, Clerke* and *Ingraham,* Justices.]