THE PEOPLE EX REL. JOHN T. HANEMAN v. THE BOARD OF TAX COMMISSIONERS OF THE CITY AND COUNTY OF NEW YORK, RESPONDENT.

*Assessment for taxation — what property subject to — extent of the State authority over regulation of commerce with foreign States — duties on imports and exports.*

Upon an application by the relator to procure a review of an assessment of his personal estate made by the respondent, he set forth that his personal estate amounted to about $125,000, which was "continuously employed in the business of exporting cotton from the United States to foreign countries." Such employment consisting in purchasing cotton in different States and exporting the same, and that as much as "$115,000 was continuously invested in cotton of the growth of the United States, which had been cleared at a custom-house, and was on shipboard in course of exportation to some foreign State or country."

*Held*, (1) that the imposition of a tax upon the relator's capital in said business was not a violation of article 1, section 8, subdivision 3 of the United States Constitution, declaring that congress shall have power to regulate commerce with foreign nations and among the several States.

(2) That it was not a violation of article 1, section 10, subdivision 2, prohibiting any State, without the consent of congress, from laying any impost or duties on imports or exports; and,

(3) That it was not a violation of article 1, section 9, subdivision 5, providing that no tax or duty shall be laid on articles exported from any State.

CERTIORARI to review an assessment of the relator's personal property made by the respondent.

*H. Charles Ulman,* for the relator.

*J. A. Beall,* for the respondent.

DANIELS, J.:

The relator has been assessed the sum of $60,000 for personal estate owned by him. He applied to the commissioners to vacate the assessment, for the reason that his personal estate, amounting in the aggregate to the sum of $125,000, with the exception of the sum of $5,500, consisted of money " continuously employed in the business of exporting cotton from the United States of America to foreign countries, through the customs department of the United States aforesaid; and that said employment consists in purchasing and paying for the cotton in different States of said United States, and actually exported by deponent in said business, and for the payment of the expenses of shipping the same as such exports." And it was further stated, that as much of his capital " as $115,000 is continuously invested in cotton of the growth of the United States, which has been cleared at a custom-house, and is on ship-board in course of exportation to some foreign State or country." For these reasons, as they were set forth by the relator, it was claimed on his behalf that the assessment violated three provisions of the Constitution of the United States. The first of these provisions is that which has declared that congress shall have power " to regulate commerce with foreign nations and among the several States, and with the Indian tribes." The second provides that " no tax or duty shall be laid on articles exported from any State;" and the third that " no State shall, without the consent of congress, lay any imposts or duties on imports or exports," etc. (Const. U. S., art. 1, § 8, sub. 3; § 9, sub. 5; § 10, sub. 2.)

The imposition of a tax upon capital can in no proper sense be affirmed to be a regulation of commerce. That has already been so frequently examined and uniformly declared as to render a particular discussion of the subject entirely needless. The authorities, very clearly, have determined that point against the relator in the present case. (*People ex rel. Pac. M. S. Co.* v. *Comrs. of Taxes*, 48 Barb., 157; S. C., 58 N. Y., 242 ; *Lott* v. *Mobile Trade Co.*, 43 Ala., 578; *Howell* v. *State*, 3 Gill, 14; *Reading R. R. Co.* v. *Pennsylvania*, 15 Wall., 284.)

In the decision of the last case it was said " that a tax upon any article of personal property that may become a subject of commerce, or upon any instrument of commerce, affects commerce itself. If the tax be upon the instrument, such as a stage coach, a railroad car, or a canal or steamboat, its tendency is to increase the cost of transportation, still it is not a tax upon transportation or upon commerce, and it has never been seriously doubted that such a tax may be laid." (Id., 294.)

The principal reliance of the learned counsel for the relator was not placed upon this provision for the purpose of sustaining the invalidity of the tax in question, but his chief dependence was upon the other two prohibitions of the federal Constitution. It was very strenuously insisted that the tax contravened the provisions declaring that no tax or duty shall be laid on articles exported from any State, and no State, without the consent of congress, shall lay any imposts or duties on imports or exports. No direct authority has been cited maintaining the position which has been taken, that the tax designed to be imposed upon the relator is a tax, duty or impost upon exports. But a principle which will sustain it has been claimed to be deducible from the authorities, in which it has been very justly held that State taxes laid directly or indirectly upon imports were invalid, because they were forbidden by these provisions of the Constitution. The first, and the most notable of these cases is that of *Brown* v. *State of Maryland* (12 Wheat., 419) ; but the tax or impost in that case was, in terms, laid upon the business of the importer of foreign merchandise. The law required him to take out and pay for a license from the authorities of the State, in order to permit him to carry on and transact the business of an importer, and that it was held the State had no power to do, .

because it was the same thing in effect as a tax upon the imports themselves. And this case would be comprehended by the principle there maintained, if a tax had been imposed upon the relator because of his business as an exporter of cotton. The case of *The People* v. *Moring* (3 Abb. Ct of Ap., 539) was held to be controlled by that authority, because the sales by brokers of foreign wines and ardent spirits, and all goods, wares, merchandise and effects imported from any place beyond the Cape of Good Hope, and all other goods, wares, merchandise and effects which were the production of any foreign country, were subjected to duties, payable into the treasury of the State for its use. (Id., 550.) The tax was not distinguished in its nature and effect from that condemned by the preceding authority. It acted directly upon the business of the importer, and it was therefore held to be nothing less than a tax upon the imports which might become the subjects of the sales designed to be regulated and controlled by the State laid.

The case of *Almy* v. *State of California* (24 How. [U. S.], 169) was decided under a law of a similar character enacted by the State of California. It, in terms, imposed a stamp tax on bills of lading for the transportation from any point or place in that State to any point or place without the State, of gold or silver coin, in whole or in part, or gold dust, or gold or silver, in bars or other form. (Id., 172), For that reason, it constituted a tax upon exports, and the law providing for it was held to contravene the provisions of the Constitution of the United States which have been already cited. The case of *Low* v. *Austin* (13 Wall., 29) was a direct attempt to impose a tax upon the imports themselves, and very much, as a matter of course, was held to share the fortune of the preceding controversies upon the same subject. The State law was held to be invalid, and the tax for that reason was set aside.

Each of these cases is clearly distinguishable from the one now before this court; for the tax imposed, held to be invalid, was either upon the articles themselves, or directly upon the business of the importer. For that reason, it involved either a direct or indirect attempt to violate the prohibitions of the United States Constitution; but in the present instance nothing of that kind was attempted or intended. No assessment was made upon, or of the property purchased and exported by the relator, nor upon the

business in which he was engaged. If that had been designed, the property he purchased or, the business he carried on would, in terms, have been made the subject of the assessment; but, instead of doing that, not the remotest allusion was made in the commissioners' proceedings to either. It was his capital, as distinguished from what it might be invested in or from the business he transacted by means of it, which was made the object of the assessment; and that in no case has been held to be exonerated from State taxation by any thing contained in the federal Constitution. The assessment was made upon it simply as so much personal estate, without reference to the advantages which might accrue to the relator by any means selected by him for its profitable employment. That use of it was not proposed to be assessed or taxed. It was regarded, as it was in fact, as so much property owned by him, and for that reason liable to taxation. In that respect, he was considered, for the purpose of taxation, in the same position as all the other inhabitants of the State owning personal property. And he was assessed simply as its owner, and neither directly nor indirectly because of the uses he might make of it. This money of which his estate consisted was not an export, and not intended for exportation. It was the property he purchased with it that acquired that character, when it was placed upon its journey to some foreign country; and that it was no part of the proceedings complained of to interfere with or restrain. The assessment was made because the relator was the owner of the money, and not because he might by means of it become the owner of commercial commodities for exportation. His liberty, or ability, profitably, to use it was in no manner infringed, but he was left entirely free in that respect.

Taxation upon capital used in commercial pursuits is by no means a novelty under the laws of the State. And where it has been restricted to that, it has not yet been considered a tax upon exports, even when the capital has been used and employed in business of that description. The principle which has been invoked to shield the relator, if it should be sustained, is one of a widely extended character. And it · has been so often infringed in the business operations of the country as hourly to have generated legal controversies, if, in fact, it had been deemed to have been sanctioned by these provisions of the Constitution. They would not have failed to result in legal proceedings, if this

principle had any foundation whatever for its support. But actions of this description have not been instituted on that account; and they can have been omitted only because a tax imposed upon capital was considered distinguishable from one upon the articles in which it might be invested by its owner for foreign exportations. The agricultural and mineral products of the country have, to a very large extent, been purchased and moved by the investment and employment of the taxed capital of the exporter; and the imports made have been purchased and imported in a similar manner; and the rights of neither have been deemed to be infringed or violated, because the capital employed had been taxed as so much property belonging to its owner. If the relator can succeed, then it must follow that every person whose capital is wholly or partially employed in foreign commerce will be entitled to be relieved to a corresponding extent from taxation. And the same principle will practically comprehend the trade carried on between the States. No more serious blow could be given to the powers of the State to tax the property owned by its citizens; for, so far as it should not be employed in mere local traffic, it would all necessarily escape taxation. That would include all products shipped to foreign countries, or transported from one State into another, and all the importations made from abroad. So great an exemption as that has not been made by any thing contained in the Constitution of the United States. It has merely exonerated the articles themselves which may be exported or imported, but not the capital by means of which the title to them may have been acquired. The capital is one degree beyond the final limits of the prohibition that has been made upon this subject. The owner is protected in his title to it by the laws of the State in which he resides, and for that reason he becomes liable to taxation on account of it. That principle includes all property existing under the laws and sovereignty of the State. It was acknowledged in the justly memorable case of *McCulloch* v. *State of Maryland* (4 Wheat., 316), where it was held that the State might rightly tax the property owned within its limits by the United States Bank, while it could not the corporate functions of the corporation itself, because it was one of the fiscal agencies of the general government. It was there declared that the people of a State " give to their government a right of taxing

themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right." (Id., 428.) And the " sovereignty of a State extends to every thing which exists by its own authority, or is introduced by its permission." And " all subjects over which the sovereign power of a State extends are objects of taxation." (Id., 429.) These general principles, maintaining the power of State taxation, were also sanctioned by the case of *Gibbons* v. *Ogden* (9 Wheat., 2). *Waring* v. *The Mayor* (8 Wall., 110), *Pervear* v. *Commonwealth* (5 id., 475), and *Howell* v. *The State* (3 Gill, 14) sustain the same position.

No authority has been found which would justify the court in extending exemptions from the power of State taxation, so far as to relieve the relator from the effects of the assessment made upon his capital in this instance, while the fair import of the terms used in the Constitution, and the construction given to them by the authorities in which they have been ·considered and applied, forbid such an extension of their legal effect. As already suggested, the assessment has been made merely upon capital, and not upon the exports purchased and moved by its instrumentality ; and for that reason it was sanctioned by the authority of which the several States have been left in the free exercise and enjoyment. No other reason was urged before the commissioners or this court why the assessment made should be vacated, and as those already considered will justify no such result, it follows that the proceedings brought up by the writ should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Proceedings affirmed, with costs.