## STATE TONNAGE TAX CASES.

### COX v. THE COLLECTOR.
### TRADE COMPANY v. SAME.

1. Although taxes levied, as on *property*, by a State upon vessels owned by its citizens, and based on a valuation of the same, are not prohibited by the Federal Constitution, yet taxes cannot be imposed on them by the State "at so much per ton of the registered tonnage." Such taxes are within the prohibition of the Constitution, that "no State shall, without the consent of Congress, lay any duty of tonnage."
2. Nor is the case varied by the fact that the vessels were not only owned by citizens of the State, but exclusively engaged in trade between places within the State.

ERROR to the Supreme Court of Alabama.

These were two cases, which, though coming in different forms, involved one and the same point only; and at the bar—where the counsel directed attention to the principle involved, separated from the accidents of the case—were discussed together as presenting "precisely the same question." The matter was thus:

The Constitution ordains that "no State shall without the consent of Congress *lay any duty of tonnage.*" With this provision in force as superior law, the State of Alabama passed on the 22d of February, 1866, a revenue law. By this law, the rate of taxation for property generally was the one-half of one per cent; but "on *all* steamboats, vessels, and other water crafts plying in the navigable waters of the State," the act levied a tax at " *the rate of* $1 *per ton of the registered tonnage thereof,*" which it declared should " be assessed and col-

lected at the port where such vessels are registered, if practicable; otherwise at any other port or landing within the State where such vessel may be."

The tax collector was directed by the act to demand, in each year, of the person in charge of the vessel, if the taxes had been paid. If a receipt for the same was not produced, he was to immediately assess the same according to tonnage, and if such tax was not paid on demand he was to seize the boat, &c., and, after notice, proceed and sell the same for payment of the tax, &c., and pay the surplus into the county treasury for the use of the owner. If the vessel could not be seized, the collector was to make the amount of the tax out of the real and personal estate of the owner, &c.

Under this act, one Lott, tax collector of the State of Alabama, demanded of Cox, the owner of the Dorrance, a steamer of 321 tons, and valued at $5000, and of several other steamers, certain sums as taxes; and under an act of 1867, identical in language with the one of 1866, just quoted, demanded from the Trade Company of Mobile certain sums on like vessels owned by them; the tax in all the cases being proportioned to the registered tonnage of the vessel.

The steamboats, the subject of the tax, were owned *exclusively by citizens of the State of Alabama,* and were engaged in the navigation of the Alabama, Bigbee, and Mobile Rivers, carrying freight and passengers between Mobile and other points of said rivers, *altogether within the limits of that State.* These waters were navigable from the sea for vessels of " ten and more tons burden;" and it was not denied that there were ports of delivery on them above the highest points to which these boats plied. The owners of the boats were not assessed for any other tax on them than the one here claimed. The boats were enrolled and licensed for the coasting trade. Though running, therefore, between points altogether within the limits of the State of Alabama, the boats were, as it seemed,* of that sort on which Congress lays a tonnage duty.

---

* See Act of July 18th, 1866, § 28, 14 Stat. at Large, 185.

Cox, under compulsion and protest, paid the tax demanded of him, and then brought *assumpsit* in one of the inferior State courts of Alabama, to get back the money. The Trade Company refused to pay, and filed a bill in a like court, to enjoin the collector from proceeding to collect. The ground of resistance to the tax in each case was this, that being laid in proportion to the tonnage of the vessel, the tax was laid in a form and manner which the State was prohibited by the already quoted section of the Constitution from adopting. The right of the State to lay a tax on vessels according to their value and as property was not denied, but on the contrary conceded.* Judgment being given in each case against the validity of the tax, the matter was taken to the Supreme Court of Alabama, which decided that it was lawful. To review that judgment the case was now here.

*Messrs. J. A. Campbell and P. Hamilton, for the plaintiffs in error :*

The right of the State to tax the property of the citizen is admitted by us; but we assert that the tax should be upon property *as property*, and not *because* it is in the shape of vessels or boats having a greater or less capacity.

" Tonnage duties," as defined by the learned Bouvier,† are " duties on vessels in proportion to their capacity." Now Congress has imposed such duties from the 20th July, 1790‡ till the present time.§ The duties are imposed upon vessels plying on the navigable waters of the United States for the purpose of traffic, according to the tonnage measurement of the vessel. The manner in which the vessel shall be admeasured is prescribed, and the time and place at which the

---

* It is barely necessary to note that an additional ground of defence to the tax was taken, in the fact that by the act of Congress admitting Alabama into the Union, it is declared, " that all navigable waters within the said State shall forever remain public highways, free to the citizens of said State, and of the United States, *without any tax, duty, impost, or toll therefor*, imposed by the said State." This ground not being passed upon by this court, need not be adverted to further.

† Law Dictionary, tit. " Tonnage."          ‡ 1 Stat. at Large, 135.
§ 12 Ib. 558; 14 Ib. 185.

duties shall be collected are determined by law. The same officer collects these duties who collects other duties.* The tax is collected yearly at the port where the vessel enters or clears for the first time.†

The argument of Mr. Langdon‡ in the Convention of 1787, " that the regulation of tonnage was an essential part of the regulation of trade, and that the States ought to have nothing to do with it," has been practically applied in this legislation of Congress. But the Alabama statute is similar in what it does to the enactments of the General Government. The duty is assessed in the same manner, is a yearly tax, and is made for the same cause. We insist, therefore, that it is void.§

The injustice of the tax in this instance, it may be added, is striking   The value of one of these boats, the Dorrance, is $5000; her tonnage, 321 tons. At the rate of taxation established by the Alabama revenue acts for property (the half of one per cent.), the tax on this vessel would be $25; but assessed on tonnage, it is $643.25; more than twelve per cent. on the value of the property.

*Mr. P. Phillips, contra :*

The vessels being owned by citizens of the State, and employed exclusively in commerce within the State, are like all other property within its jurisdiction, subject to taxation.‖ This being admitted, of what consequence can it be to the citizens of any other State, what *form* the State may adopt in which to impose the tax? Why should the consent of Congress be asked, to the imposition of a tonnage tax in a case, when it is admitted that the State has full power to tax. It is evident that this provision is of the category of prohibitions, in which we find that " no preference shall be given in any regulation of commerce to the ports of one State over

---

* 1 Stat. at Large, 287, ch. 35, § 44; 13 Id. 69.

† 14 Id. 185, ch. 201, § 28.          ‡ 3 Madison Papers, 1586

§ Sinnot *v.* Davenport, 22 Howard, 227; Foster *v* Davenport, Ib. 245.

‖ Passenger Cases, 7 Howard, 402; Nathan *v.* Louisiana, 8 Id. 82; Hays *v.* Pacific Co., 17 Id. 599.

those of another;" and that "vessels bound to or from one
State, shall not be obliged to enter, clear, or pay duties in
another." These, like all other constitutional provisions,
extend to cases where there is a general interest or concern.
They do not deal with cases where the citizens of the State
are alone interested. The Constitution does not deal with
words, but with substance, and is to be construed accord-
ingly. A tax which in reality operates as a "tonnage" duty,
though not in the form of such a duty, would, when the pro-
hibition was intended to apply, be held invalid.* On the
other hand, when the case is not within the intent of the
prohibition, the form of the tax will be disregarded. Pilot
fees in one case† were levied at so much per ton, and yet this
court held, that to consider this as a tonnage duty, "would
be to confound things essentially different. It is the thing,
and not the name which is to be considered." The Consti-
tution provides that "no State shall levy any duty on imports
or exports," yet when the question was presented to this
court, as to the power of the State to levy a tax on goods
imported from another State, the court did not confine itself
to the mere word "import," but proceeded to inquire into
the true meaning and design of the prohibition, and held,
that the word did not include imports from another State,
but was applicable alone to goods brought from a foreign.
country.‡

That the tax may operate very unequally upon different
sorts of property owned by the people of Alabama, is no
argument against the constitutionality of the tax, though it
may be so against its policy. But the policy of any State
tax is a matter for the legislature of the State alone to de-
cide on. It will be admitted by the other side, that the same
inequality might be lawfully brought about if it were done
in another form.

Nor, we may reply in passing, is the inequality produced
by the Alabama statute, greater than that which Congress

---

* Steamship Company v. Port Wardens, 6 Wallace, 31.

† Cooley v. Board of Wardens, 12 Howard, 314.

‡ Woodruff v. Parham, 8 Wallace, 123.

produces by its statutes laying a tonnage tax; for an old and decayed vessel, though it may be worth but quarter as much as a well-built, new, and sound one, must pay, under the act of Congress, if the tonnage capacity of the two vessels be the same, exactly the same amount of tax.

*Reply:* Though the vessels in this particular case are all owned by citizens of Alabama, the statute taxing them, applies to "all" vessels plying in the navigable waters of the State by whomsoever owned. We say that the *statute* is void, and not simply that this particular tax is unlawful.

Mr. Justice CLIFFORD delivered the judgment of the court, giving an opinion in each of the cases.

## I. IN THE FIRST CASE.

Assumpsit for money had and received is an appropriate remedy to recover back moneys illegally exacted by a collector as taxes in all jurisdictions where no other remedy is given, unless the tax was voluntarily paid or some statutory conditions are annexed to the exercise of the right to sue, which were unknown at common law.

Where the party assessed voluntarily pays the tax he is without remedy in such an action, but if the tax is illegal or was erroneously assessed, and he paid it by compulsion of law, or under protest, or with notice that he intends to institute a suit to test the validity of the tax, he may recover it back in such an action, unless the legislative authority, in the jurisdiction where the tax was levied, has prescribed some other remedy or has annexed some other conditions to the exercise of the right to institute such a suit.*

On the twenty-second of February, 1866, the legislature of Alabama passed a revenue act, and therein, among other things, levied a tax "on all steamboats, vessels, and other water-crafts plying in the navigable waters of the State, at

---

* Elliott *v.* Swartwout, 10 Peters, 150; Bend *v.* Hoyt, 13 Id. 267.

the rate of one dollar per ton of the registered tonnage thereof," to "be assessed and collected at the port where such vessels are registered, if practicable, otherwise at any other port or landing within the State where such vessel may be."*

Five steamboats were owned by the plaintiffs, who were citizens of that State, doing business at Mobile under the firm name set forth in the record. All of the steamboats were duly enrolled and licensed in conformity to the act of Congress. entitled "An act for enrolling and licensing ships and vessels to be employed in the coasting trade of the United States," and the record shows that at the time the taxes, which are the subject of controversy, were imposed and collected, all those steamboats were engaged in the navigation of the Alabama, Bigbee, and Mobile Rivers, in the transportation of freight and passengers between the port of Mobile and other towns and landings on said rivers, within the limits of the State, the said rivers being "waters navigable from the sea by vessels of ten or more tons burden."†

Such steamboats are deemed ships and vessels of the United States, and as such are entitled to the privileges secured to such ships and vessels by the act of Congress providing for enrolling and licensing ships and vessels to be employed in that trade.‡

Annexed to the agreed statement exhibited in the record is a schedule of the taxes imposed and collected, in which are also given the names of the respective steamboats, their tonnage and their value, and the proportion assessed by the county as well as that imposed by the State. Committed as the assessments were to the same person to collect, it is immaterial whether the taxes were assessed for the State or for the county, as the collector demanded the whole amount of the plaintiffs, and they paid the same under protest, the sums specified as county taxes including also a charge made by the collector for fees in collecting the money.

---

* Sess. Acts 1846, p. 7.          † 1 Stat. at Large, 77.          ‡ Ib. 305.

Separately stated the taxes were as follows: On the steamboat C. W. Dorrance, 321 tons burden, valued at five thousand dollars, taxed, state tax $321, county tax $322.25; Flirt, tonnage 214 tons, valued at two thousand five hundred, dollars, taxed, state tax $214, county tax $215.25; Cherokee, tonnage 310 tons, valued at fifteen thousand five hundred dollars, taxed, state tax $310, county tax $311.25; Coquette, tonnage 245 tons, valued at four thousand dollars, taxed, state tax $245, county tax $246.25; St. Charles, tonnage 331 tons, valued at fifteen thousand dollars, taxed, state tax $331, county tax $332.25; showing that the county tax as well as the state tax is one dollar per ton of the registered tonnage of the steamboats, exclusive of the fees charged by the collector.

Demand of the taxes having been made by the collector, the plaintiffs protested that the same were illegal, but they ultimately paid the same to prevent the collector from seizing the steamboats and selling the same in case they refused to pay the amount. They paid the sum of two thousand eight hundred and forty-eight dollars and twenty-five cents as the amount of the taxes, fees, and expenses demanded by the defendant, and brought an action of assumpsit against the collector in the Circuit Court of the State for Mobile County to recover back the amount, upon the ground that the sum was illegally exacted. Judgment was rendered in that court for the plaintiffs, the court deciding that the facts disclosed in the agreed statement showed that the taxes were illegal, as having been levied in violation of the Federal Constitution. Appeal was taken by the defendant to the Supreme Court of the State, where the parties were again heard, but the Supreme Court of the State, differing in opinion from the Circuit Court where the suit was commenced, rendered judgment for the defendant; whereupon the plaintiffs sued out a writ of error and removed the record into this court for re-examination.

I. Two principal objections were made to the taxes by the plaintiffs, as appears by the agreed statement, which is made a part of the record. (1) That the taxes as levied and col-

lected were in direct contravention of the prohibition of the Constitution, that "no State shall, without the consent of Congress, levy any duty of tonnage," and the proposition of the plaintiffs was and still is that the act of the legislature of the State directs in express terms that such taxes shall be levied on all steamboats, vessels, and other water-crafts plying in the navigable waters of the State. (2) That the State law levying the taxes violates the compact between the State and the United States, that "all navigable waters within the said State shall forever remain public highways, free to the citizens of the said State and of the United States, without any tax, duty, impost, or toll therefor imposed by the said State."*

1. Congress has prescribed the rules of admeasurement and computation for estimating the tonnage of American ships and vessels.†

Viewed in the light of those enactments, the word tonnage, as applied to American ships and vessels, must be held to mean their entire internal cubical capacity, or contents of the ship or vessel expressed in tons of one hundred cubical feet each, as estimated and ascertained by those rules of admeasurement and of computation.‡

Power to tax, with certain exceptions, resides with the States independent of the Federal government, and the power, when confined within its true limits, may be exercised without restraint from any Federal authority. They cannot, however, without the consent of Congress, lay any duty of tonnage, nor can they levy any imposts or duties on imports or exports, except what may be absolutely necessary for executing their inspection laws, as without the consent of Congress they are unconditionally prohibited from exercising any such power. Outside of those prohibitions the power of the States to tax extends to all objects within the sovereign power of the States, except the means and instruments of the Federal government. But ships and vessels

---

* 3 Stat. at Large, 492.        † 13 Id. 70; Ib. 444.
‡ Alexander v. Railroad, 3 Strobhart, 598.

owned by individuals and belonging to the commercial marine are regarded as the private property of their owners, and not as the instruments or means of the Federal government, and as such, when viewed as property, they are plainly within the taxing power of the States, as they are not withdrawn from the operation of that power by any express or implied prohibition contained in the Federal Constitution.*

Argument, therefore, to show that they may be taxed as other property belonging to the citizens of the State is hardly necessary, as the opposite theory is indefensible in principle, contrary to the generally received opinion, and is wholly unsupported by any judicial determination. Direct adjudication to support that proposition is not to be found in the reported decisions of this court, but there are several cases which concede that such a tax, if levied by a State, would be legal, and no doubt is entertained that the concession is properly made.†

Such a concession, however, does not advance the argument much for the defendant, as it is not only equally true but absolutely certain that no State can, without the consent of Congress, lay any duty of tonnage, and the question still remains to be determined whether the taxes in this case were or were not levied as duties of tonnage, as it is clear, if they were, that the judgment of the State court must be reversed.

Taxes levied by a State upon ships and vessels owned by the citizens of the State *as property, based on a valuation of the same* as property, are not within the prohibition of the Constitution, but it is equally clear and undeniable that taxes levied by a State upon ships and vessels as instruments of commerce and navigation are within that clause of the instrument which prohibits the States from levying *any duty of tonnage,* without the consent of Congress; and it makes no difference whether the ships or vessels taxed belong to the citizens of the State which levies the tax or the citizens

---

* Nathan *v.* Louisiana, 8 Howard, 82; Howell *v.* Maryland, 3 Gill, 14.

† Passenger Cases, 7 Howard, 402; Hays *v.* The Pacific Mail Steamship Co., 17 Id. 598.

of another State, as the prohibition is general, withdrawing altogether from the States the power to lay any duty of tonnage under any circumstances, without the consent of Congress.*

Annual taxes upon property in ships and vessels are continually laid, and their validity was never doubted or called in question, but if the States, without the consent of Congress, tax ships or vessels as instruments of commerce, by a tonnage duty, or indirectly by imposing the tax upon the master or crew, they assume a jurisdiction which they do not possess, as every such act falls directly within the prohibition of the Constitution.†

Prior to the adoption of the Constitution the States attempted to regulate commerce, and they also levied duties on imports and exports and duties of tonnage, and it was the embarrassments growing out of such regulations and conflicting obligations which mainly led to the abandonment of the Confederation and to the more perfect union under the present Constitution.

Congress possesses the power to regulate commerce with foreign nations and among the several States, and it is well-settled law that the word commerce, as used in the Constitution, comprehends navigation, and that it extends to every species of commercial intercourse between the United States and foreign nations and to all commerce in the several States, except such as is completely internal and which does not extend to or affect other States.‡

Authority is also conferred upon Congress to lay and collect taxes, but this grant does not supersede the power of the States to tax for the support of their own governments, nor is the exercise of that power by the States, unless it extends to objects prohibited by the Constitution, an exercise of any portion of the power that is granted to the United States.

---

* Gibbons v. Ogden, 9 Wheaton, 202; Sinnot v. Davenport, 22 Howard, 238; Foster v. Davenport, Ib. 245; Perry v. Torrence, 8 Ohio, 524.

† Passenger Cases, 7 Howard, 447, 481.

‡ Gibbons v. Ogden, 9 Wheaton, 193.

Whether the act of laying and collecting taxes, duties, imposts, and excises was a branch of the taxing power or of the power to regulate commerce, was directly under consideration in the case last cited, and it was conclusively settled that the exercise of such a power must be classed with the power to levy taxes.   Had the Constitution, therefore, contained no prohibition, it is quite clear that it would have been competent for the States to levy duties on imports, exports, or tonnage, as they had done under the Confederation.

Tonnage duties are as much taxes as duties on imports or exports, and the prohibition of the Constitution extends as fully to such duties if levied by the States as to duties on imports or exports, and for reasons quite as strong as those which induced the framers of the Constitution to withdraw imports and exports from State taxation.   Measures, however, scarcely distinguishable from each other may flow from distinct grants of power, as for example, Congress does not possess the power to regulate the purely internal commerce of the States, but Congress may enrol and license ships and vessels to sail from one port to another in the same State, and it is clear that such ships and vessels are deemed ships and vessels of the United States, and that as such they are entitled to the privileges of ships and vessels employed in the coasting trade.*

Ships and vessels enrolled and licensed under that act are authorized to carry on the coasting trade, as the act contains a positive enactment that the ships and vessels it describes, and no others, shall be deemed ships or vessels of the United States entitled to the privileges of ships and vessels employed in the trade therein described.†

Evidently the word license, as used in that act, as the court say in that case, means permission or authority, and it is equally clear that a license to do any particular thing is a permission or authority to do that thing, and if granted by a person having power to grant it, that it transfers to the grantee the right to do whatever it purports to authorize.

---

* 1 Stat. at Large, 287; Ib. 305; 3 Kent (11th ed.), 203.
† Gibbons v. Ogden, 9 Wheaton, 212.

Unquestionably the power to regulate commerce includes navigation as well as traffic in its ordinary signification, and embraces ships and vessels as the instruments of intercourse and trade as well as the officers and seamen employed in their navigation.*

Steamboats, as well as sailing ships and vessels, are required to be enrolled and licensed. for the coasting trade, and the record shows that all the steamboats taxed in this case had conformed to all the regulations of Congress in that regard, that they were duly enrolled and licensed for the coasting trade and were engaged in the transportation of passengers and freight within the limits of the State, upon waters navigable from the sea by vessels of ten or more tons burden.

Tonnage duties, to a greater or less extent, have been imposed by Congress ever since the Federal government was organized under the Constitution to the present time. They have usually been exacted when the ship or vessel entered the port, and have been collected in a manner not substantially different from that prescribed in the act of the State legislature under consideration. Undisputed authority exists in Congress to impose such duties, and it is not pretended that any consent has ever been given by Congress to the State to exercise any such power.

If the tax levied is a duty of tonnage, it is conceded that it is illegal, and it is difficult to see how the concession could be avoided, as the prohibition is express, but the attempt is made to show that the legislature in enacting the law imposing the tax, merely referred to the registered tonnage of the steamboats "as a way or mode to determine and ascertain the tax to be assessed on the steamboats, and to furnish a rule or rate to govern the assessors in the performance of their duties."

Suppose that could be admitted, it would not have much

---

* Brown *v.* Maryland, 12 Wheaton, 445; New York *v.* Miln, 11 Peters, 134; People *v.* Brooks, 4 Denio, 476; Steamboat Co. *v.* Livingston, 3 Cowen, 743.

tendency to strengthen the argument for the defendant, as the suggestion concedes what is obvious from the schedule, that the taxes are levied without any regard to the value of the steamboats. But the proposition involved in the suggestion cannot be admitted, as by the very terms of the act, the tax is levied on the steamboats wholly irrespective of the value of the vessels as property, and solely and exclusively on the basis of their cubical contents as ascertained by the rules of admeasurement and computation prescribed by the act of Congress.

By the terms of the law the taxation prescribed is "at the rate of one dollar per ton of the registered tonnage thereof," and the ninetieth section of the act provides that the tax collector must, each year, demand of the person in charge of the steamboat whether the taxes have been paid, and if the person in charge fails to produce a receipt therefor by a tax collector, authorized to collect such taxes, the collector having the list must at once proceed to assess the same, and if the tax is not paid on demand he must seize such steamboat, &c., and after twenty days' notice, as therein prescribed, shall sell the same, or so much thereof, as will pay the taxes and expenses for keeping and costs.*

Legislative enactments, where the language is unambiguous, cannot be changed by construction, nor can the language be divested of its plain and obvious meaning. Taxes levied under an enactment which directs that a tax shall be imposed on steamboats at the rate of one dollar per ton of the registered tonnage thereof, and that the same shall be assessed and collected at the port where such steamboats are registered, cannot, in the judgment of this court, be held to be a tax on the steamboat as property. On the contrary the tax is just what the language imports, a duty of tonnage, which is made even plainer when it comes to be considered that the steamboats are not to be taxed at all unless they are "plying in the navigable waters of the State," showing to a demonstration that it is as instruments of commerce and

---

* Sess. Acts 1866, pp. 7, 31.

not as property that they are required to contribute to the revenues of the State.

Such a provision is much more clearly within the prohibition in question than the one involved in a recent case decided by this court, in which it was held that a statute of a State enacting that the wardens of a port were entitled to demand and receive, in addition to other fees, the sum of five dollars for every vessel arriving at the port, whether called on to perform any service or not, was both a regulation of commerce and a duty of tonnage, and that as such it was unconstitutional and void.*

Speaking of the same prohibition, the Chief Justice said in that case that those words in their most obvious and general sense describe a duty proportioned to the tonnage of the vessel—a certain rate on each ton—which is exactly what is directed by the provision in the tax act before the court, but he added that it seems plain, if the Constitution be taken in that restricted sense, it would not fully accomplish the intent of the framers, as the prohibition upon the States against levying duties on imports or exports would be ineffectual if it did not also extend to duties on the ships which serve as the vehicles of conveyance, which was doubtless intended by the prohibition of any duty of tonnage. "It was not only a *pro rata* tax which was prohibited, but *any duty* on the ship, whether a fixed sum upon its whole tonnage, or a sum to be ascertained by comparing the amount of tonnage with the rate of duty."

Assume the rule to be as there laid down and all must agree that "the levy of the tax in question is expressly prohibited, as the schedule shows that it is exactly proportioned to the registered tonnage of the steamboats plying in the navigable waters of the State."

Strong as the language of the Chief Justice is in that case, it is no stronger than the language employed by the Supreme Court of the State to which this writ of error was addressed in the case of *Sheffield* v. *Parsons*,† in which the court in effect

---

* Steamship Co. *v.* Port Wardens, 6 Wallace, 34.

† 3 Stewart & Porter, 304.

says that no tax, custom, or toll, can be levied " on the tonnage of any vessel, without the consent of Congress, for any purpose." Precisely the same rule was applied by that court to vessels duly enrolled and licensed for the coasting trade, and which were exclusively engaged in the towage and lighterage business in the bay and harbor of Mobile, carrying passengers and freight between the city and vessels at the anchorage below the bar.*

Some stress was laid in that case upon the circumstance that the vessels taxed were engaged in transporting cargoes to and from vessels engaged in foreign commerce, bound to that port, but it is quite clear that that circumstance is entitled to no weight, as the prohibition extends to *all ships and vessels* entitled to the privileges of ships and vessels employed in the coasting trade, whether employed in commercial intercourse between ports in different States or between different ports in the same State.†

Formerly harbor-masters, at the port of Charleston, by an ordinance of that city, might exact one cent per ton, once in every three months, of every steam packet or other vessel from certain adjoining States trading steadily there and performing regular successive voyages to that port, but when the question came to be presented to the Court of Errors of that State, the judges unanimously held that the exaction was a duty of tonnage, and that, as such, the provision was unconstitutional and void.‡

Taxes in aid of the inspection laws of a State, under special circumstances, have been upheld as necessary to promote the interests of commerce and the security of navigation.§

Laws of that character are upheld as contemplating benefits and advantages to commerce and navigation, and as altogether distinct from imposts and duties on imports and exports and duties of tonnage. Usage, it is said, has sanctioned

---

\* Lott *v.* Morgan, 41 Alabama, 250.

† People *v.* Saratoga and Rensselaer Railroad Company, 15 Wendell, 131; Steamboat Company *v.* Livingston, 3 Cowen, 743.

‡ Alexander *v.* Railroad, 3 Strobhart, 598.

§ Cooley *v.* Port Wardens, 12 Howard, 314.

such laws where Congress has not legislated, but it is clear that such laws bear no relation to the act in question, as the act under consideration is emphatically an act to raise revenue to replenish the treasury of the State and for no other purpose, and does not contemplate any beneficial service for the steamboats or other vessels subjected to taxation.

Beyond question the act is an act to raise revenue without any corresponding or equivalent benefit or advantage to the vessels taxed or to the shipowners, and consequently it cannot be upheld by virtue of the rules applied in the construction of laws regulating pilot dues and port charges.*

Attempt was made in the case of *Alexander* v. *Railroad* to show that the form of levying the tax was simply a mode of assessing the vessels as property, but the argument did not prevail, nor can it in this case, as the amount of the tax is measured by the tonnage of the steamboats and not by their value as property.

Reference is made to the case of the *Towboat Company* v. *Bordelon*† as asserting the opposite rule, but the court is of a different opinion, as the tax in that case was levied, not upon the boat but upon the capital of the company owning the boat, and the court in delivering their opinion say the capital of the company is property, and the constitution of the State requires an equal and uniform tax to be imposed upon it with the other property of the State for the support of government.

For these reasons the court is of opinion that the State law levying the taxes in this case is unconstitutional and void, that the judgment of the State court is erroneous and that it must be reversed, and having come to that conclusion the court does not find it necessary to determine the other question.

JUDGMENT REVERSED with costs, and the cause remanded for further proceedings in conformity to the opinion of the court.

---

* State *v.* Charleston, 4 Rich., S. C. 286; Benedict *v.* Vanderbilt, 1 Robt. N. Y. 200.

† 7 Louisiana An. 195.

## II. IN THE SECOND CASE.

Much discussion of the questions involved in this record will not be required, as they are substantially the same as those presented in the preceding case, which have already been fully considered and definitely decided.

Submitted, as the case was, in the court below, on a demurrer to the bill of complaint, and on the answer of the respondent, it will be necessary to refer to the pleadings to ascertain the nature of the controversy, by which it appears that the complainants are a corporation, created by the legislature of the State of Alabama, having their place of business at Mobile, in that State; that they were the owners of twelve steamboats, as alleged in the bill of complaint, filed by them on the twelfth of October, 1867, in the Chancery Court for that county, and that the respondent is the collector of taxes for that county, and a resident of the city of Mobile.

Coming to the merits, the complainants allege that the respondent, as such collector, pretends and insists that they are liable under the laws of the State to pay a State tax of one dollar per ton of the registered tonnage of the said several steamboats, without any regard to their value as property; that he also claims that he, as such collector, is authorized by law to collect that amount of the complainants, and also another sum, equal to seventy-five per cent. of the State tax, for the county, and also another sum, equal to twenty-five per cent. of the State tax, as a school tax, making in all a tax of two dollars per ton of the registered tonnage of the said several steamboats, exclusive of the fees of the collector and assessor, amounting to one dollar and fifty cents on each of the said steamboats. All of the taxes in controversy in this case were levied by virtue of an act of the legislature approved February 19th, 1867, entitled "An act to establish revenue laws for the State," and it is conceded that the provisions, so far as respects this controversy, are the same as the act under which the taxes were

levied in the preceding case.* Bills of the taxes, it is alleged, were rendered to the complainants, but it is not necessary to enter into these details, except to say that the taxes were levied in the same form as in the preceding case, and the complainants allege that the respondent claims that he is authorized, in case they refuse to pay the taxes, to seize the respective steamboats, and that he may proceed, after twenty days' notice, to sell the same, or as much thereof as will pay the taxes, expenses, and costs. They, the complainants, deny the legality of the taxes, and allege that the respondent, as such collector, threatens to seize the said steamboats and to proceed to sell the same to pay the taxes, expenses, and costs, which, they insist, would be contrary to equity. Being without any remedy at law, as they allege, they ask the interposition of a court of equity, and allege that the taxes are illegal upon two grounds, which are as follows:

1. That the tax is a duty of tonnage, levied in violation of the tenth section of the first article of the Constitution, and in support of that allegation they allege that all the steamboats, at the time the taxes were levied, were, and that they still are, duly enrolled and regularly licensed to engage in the coasting trade under and in pursuance of the revenue laws of the United States, and that all the duties imposed upon the steamboats by the laws of the United States have been paid and discharged.

2. That the law of the State levying the taxes is in violation of the act of Congress passed to enable the people of Alabama Territory to form a constitution and State government, and for the admission of the same into the Union, and of the ordinance passed by the people of the Territory accepting that provision.† Wherefore they pray for process and for an injunction. Process was issued and served, and the respondent appeared and filed an answer, setting up the validity of the taxes, and alleging that the taxes were not intended to be a tonnage duty, but simply and only a tax on

---

* Sess. Acts 1867, p. 645; Revised Code 1867, p. 169, art. ii, § 434, p. 11.
† 3 Stat. at Large, 492

the personal property held by the complainants.   He also demurred to the bill of complaint, insisting that nothing alleged and charged therein was sufficient to require a further answer.   Prior to the filing of the answer the chancellor granted a temporary injunction, and the cause having been subsequently submitted to the court on bill and answer, the chancellor entered a decree making the injunction perpetual, and the respondent appealed to the Supreme Court of the State, where the injunction was dissolved and the bill of complaint was dismissed.   Dissatisfied with that decree the complainants sued out a writ of error and removed the cause into this court.

Different remedies are accorded to a complaining party in different jurisdictions for grievances such as the one set forth in the bill of complaint before the court.   Usually preventive remedies are discountenanced as embarrassing to the just operations of the government, and the party taxed is required to pay the tax and seek redress in an action of assumpsit against the collector for money had and received.   Decided cases may also be referred to where it is held that trespass will lie against the assessor, if it appear that the whole tax was levied without authority, as in that state of the case it is held that the assessor had no jurisdiction of the subject-matter.   Preventive remedies, however, are accorded in some of the States, and in cases brought here by writ of error under the twenty-fifth section of the Judiciary Act, if no objection was taken in the court below to the form of the remedy employed, and none is taken in this court, it may safely be assumed that the proceeding adopted was regarded in the court below as an appropriate remedy for the alleged grievance.   Doubts upon that subject cannot be entertained in this case, as the record shows that both courts heard and determined the case upon the merits, and all parties conceded throughout the litigation that the complainants were entitled to the relief prayed in the bill of complaint, if the taxes were illegal, and the law levying the same was unconstitutional and void.

Power to tax for the support of the State governments. exists in the States independently of the Federal government, and it may well be admitted that where there is no cession of jurisdiction for the purposes specified in the Constitution, and no restraining compact between the States and the Federal government, the power in the States to tax reaches all the property within the State which is not properly denominated the instruments or means of the Federal government.*

Concede all that and still the court is of the opinion that the tax in this case is a duty of tonnage, and that the law imposing it is plainly unconstitutional and void. Taxes, as the law provides, must be assessed by the assessor in each county on and from the following subjects and at the following rates, to wit: "On all steamboats, &c., plying in the navigable waters of the State, at the rate of one dollar per ton of the registered tonnage thereof," which must be assessed and collected at the port where such steamboats are registered, &c.† Copied as the provision is from the enactment of the previous year, it is obvious that it must receive the same construction, and as the tax is one dollar per ton it is too plain for argument that the amount of the tax depends upon the carrying capacity of the steamboat and not upon her value as property, as the experience of every one shows that a small steamer, new and well built, may be of much greater value than a large one, badly built or in need of extensive repairs. Separate lists are made for the county and school taxes, but the two combined amount exactly to one dollar per ton, as in the levy for the State tax, and the court is of the opinion that the case falls within the same rule as the case just decided.

Evidently the word tonnage in commercial designation means the number of tons burden the ship or vessel will

---

* Nathan v Louisiana, 8 Howard, 82; McCulloch v. Maryland, 4 Wheaton, 429; Society for Savings v. Coite, 6 Wallace, 604; Brown v. Maryland, 12 Wheaton, 448; Weston v. Charleston, 2 Peters, 467.

† Revised Code, 169.

carry, as estimated and ascertained by the official admeasurement and computation prescribed by the public authority. Regulations upon the subject are enacted by Parliament in the parent country and by Congress in this country, as appears by several acts of Congress.*  Tonnage, says a writer of experience, has long been an official term intended originally to express the burden that a ship would carry, in order that the various dues and customs which are levied upon shipping might be levied according to the size of the vessel, or rather in proportion to her capability of carrying burden. Hence the term, as applied to a ship, has become almost synonymous with that of size.† Apply that interpretation to the word tonnage as used in the tax act under consideration, and it is as clear as anything can be in legislation that the tax imposed by that provision is a tonnage tax, or duty of tonnage, as the phrase is in the Constitution.

State authority to tax ships and vessels, it is supposed by the respondent, extends to all cases where the ship or vessel is not employed in foreign commerce or in commerce between ports or places in different States.   He concedes that the States cannot levy a duty of tonnage on ships or vessels if the ship or vessel is employed in foreign commerce or in commerce "among the States," but he denies that the prohibition extends to ships or vessels employed in commerce between ports and places in the same State, and that is the leading error in the opinion of the Supreme Court of the State.   Founded upon that mistake the proposition is that all taxes are taxes on property, although levied on ships and vessels duly enrolled and licensed, if the ship or vessel is not employed in foreign commerce or in commerce among the States.

Ships or vessels of ten or more tons burden, duly enrolled and licensed, if engaged in commerce on waters which are navigable by such vessels from the sea, are ships and vessels of the United States entitled to the privileges secured to

---

* 1 Stat. at Large, 305; 13 Id. 444.
† Homan's Com. and Nav., Tonnage.

such vessels by the act for enrolling or licensing ships or vessels to be employed in the coasting trade.*

Such a rule as that assumed by the respondent would incorporate into the Constitution an exception which it does not contain. Had the prohibition in terms applied only to ships and vessels employed in foreign commerce or in commerce among the States, his construction would be right, but courts of justice cannot add any new provision to the fundamental law, and, if not, it seems clear to a demonstration that the construction assumed by the respondent is erroneous.

Decree reversed and the cause remanded for further proceedings in conformity to the opinion of this court.

----

* 1 Stat. at Large, 205; Ib. 287.