Railroad and Steamship Company vs. Board of Health.

## No. 8755.

MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY
vs. THE BOARD OF HEALTH OF THE STATE OF LOUISIANA.

The fees and charges imposed on vessels by the quarantine laws of the State, are exactions in compensation for services rendered, and are not taxes, duties or imposts, within the prohibition of the Federal Constitution.

The Supreme Court of the United States has never decided that the States have not the power to exact such fees in execution of their quarantine laws, but, on the contrary, has intimated that the power does exist as incident to the power to establish quarantine regulations. The power has been long and uniformly exercised by the States, without question.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

_Leovy & Kruttschnitt_ for Plaintiff and Appellee.

1. The statute of 1882, (No. 69) entitled "an act to fix and regulate quarantine charges *at the Mississippi river station,*" etc., is a local and special law, and is null and void, because prohibited by Article 48 of the Louisiana Constitution    As to local and special laws see 19 Iowa, 43; 4 Kansas, 124; 23 Md. 503.

2. It is null and void because it contravenes Article 30 of the Louisiana Constitution, being an amendment of the last paragraph of section 3042 of the Revised Statutes, (originally Act 1858, p. 186) and it omits the first and last sentences of the section. The section amended is not "re-enacted and published at length."

3. The act of 1882, No. 69, entitled "An Act to fix and regulate quarantine charges at the Mississippi river station," etc. and all other acts of the State legislature, imposing charges on vessels to maintain a quarantine system, are null and void, because violating paragraph 3, section 10, article 1 of the United States Constitution, which declares that "no State shall, without the consent of Congress, lay any duty of tonnage." 6 Wall. 31; 12 Wall. 218; 19 Wall. 581; 20 Wall. 580; 92 U. S. S. C., p. 259; 94 U S. S. C., p. 238; 95 U. S. S. C., p. 80; 100 U. S. S. C., p. 423; 105 U. S. S. C., 166; 31 An. 65; 32 An. 1293; 34 An. 703.

4. The Act of 1882, No. 69, fixing and regulating quarantine charges is null and void, because in conflict with paragraph 3, Section 8, Art. 1 of the United States Constitution, which gives to citizens the power "to regulate commerce." 9 Wheaton, 205 ; 6 Wall. 31; 19 Wall. 581; 92 U. S. S. C., pp. 259 and 275; 94 U. S. S. C., p. 246; 100 U. S. S. C., p. 443' and the case of New York vs. The Compagnie General Transatlantique, just decided by United States Supreme Court; (Supplement to Federal Reporter, Vol. 2, p. 87); 31 An. 65; 32 An. 1293; 34 An. 703.

5. The power to regulate commerce is vested *exclusively* in Congress; it is no longer an open question. U. S. Constitution, Art. 1, Sec. 8, § 3; 9 Wheaton, 186; 12 Wheaton, 414; 12 Peters, 72; 6 Wall. 31; 92 U. S. S. C., 259 and 275; 94 U. S. S. C., 246; 100 U. S S, C., 434.

6. The Act of 1870, (Rev. Stat., Sec. 3042) which declares that "any steamship from Florida, Alabama, Mississippi or Texas, shall pay *ten* dollars; any steamship from other ports shall pay *twenty* dollars," is in conflict with Art. 1, Sec. 9, § 6 of the United States Constitution, which declares that "no preference shall be given by any regulation of commerce or revenue, to the ports of one State over those of another; nor shall vessels bound to or from one State, be obliged to enter, clear or pay duties in another." 94 U. S. S. C., p. 243; 100 U. S. S. C., p. 434.

7. The duty imposed on vessels br the act of 1882, No. 69, and the other statutes relating to quarantine is not an "inspection" law. 9 Wheaton, 1, 203; 1 Kent, 439; Story on Consti-

tution, § 1017; 8 Cowan, 45; 13 Reporter, 326; New York vs. Compagnie Transatlantique; Supplement to Federal Reporter, vol. 2, p. 87.

8. The Acts of 1882, No. 69, and 1870, (R. S., sec. 3042) are null and void, because they violate the prohibitory act of Congress of 1799, which declares that no State shall, for vuarantine or health purposes, collect any duty of tonnage or impost.

*Huntington & Dufour, Amici Curiæ,* on the same side.

*F. C. Zacharie* and *E. D. White* for Defendants and Appellants.

1. The quarantine law of Louisiana, like the quarantine laws of other States, is neither a regulation of commerce nor a duty on articles imported from one State to another, such as is prohibited by the Constitution of the United States. Burroughs on Taxation, p. 97; 9 Wheaton, 1; 5 Otto, 472; 2 Otto, 270; Burroughs, 105; 7 Howard, 414.

2. Nor does the law impose a duty of tonnage prohibited by the Constitution of the United States. Burroughs, 89; 12 Wallace, 204; 29 Grattan, 419, 422; 20 Wallace, 577; 19 Wallace, 581; 6 Wallace, 31; 12 Wallace, 205; 95 United States, 81; Parkersburg & O. R. R. Trans. Co. vs. City of Parkersburg, ( United States Supreme Court not reported in volume.

3. The inspection fees are in the nature of compensation for services. Baker on Quarantine, 343, *et seq ;* 12 Howard, 312; 13 Wallace, 241. 242; 9 Wheaton, 205; Pilot cases United States Supreme Court, 2 Wallace, 457.

---

The opinion of the Court was delivered by

FENNER, J. The Act No. 69 of 1882, of the General Assembly of the State of Louisiana, provides that "The resident physician at the quarantine station on the Mississippi river shall require for every inspection and granting certificate, the following fees and charges: for every ship, thirty (30) dollars; for every bark, twenty (20) dollars; for every brig, ten (10) dollars; for every schooner, seven dollars and fifty cents (7 50); for every steamboat (towboats excepted), five (5) dollars; for every steamship, thirty (30) dollars."

By virtue of other provisions of the quarantine laws of the State, it is made the duty of the resident physician, or his assistant, to visit and inspect every vessel entering the port of New Orleans through the Mississippi river." If he finds the vessel "free from disease, not in a foul condition, and not from an infected district," he is required to furnish her with a "certificate of health," and allow her to proceed to the city. Vessels "in a foul condition," or having on board persons suffering or who have suffered during the voyage from "contagious, pestilential or infectious diseases," he is required to detain for such time, not less than ten days, as he may deem necessary; and "to employ such means of purification of the vessels as may be directed by the Board of Health," and to require payment therefor from the vessel. "Vessels out ten days *from infected ports,* presenting clean bills of health, not having nor having had sickness on board, and which are not in foul condition, shall

be permitted to pass to the city after thorough fumigation by disinfecting agents." Revised Statutes, §§ 3042–3–5.

The practice under these laws is to visit and inspect every vessel and to require, in every case, the fee prescribed therefor; and in cases where, under the law, the service of disinfection by fumigation is rendered, to require therefor an additional fee of twenty or twenty-five dollars as the estimated expense thereof.

Plaintiff is the owner of a number of vessels plying between the port of New Orleans and various other ports of this and other countries. The object of the present suit is to perpetually enjoin the collection of the fees and charges above mentioned and to restrain the defendant from detaining the plaintiff's vessels because of their non-payment; on the ground that the laws authorizing the same are null and void, because they contravene:

1. Article 1, sec. 8, par. 3, of the Constitution of the United States, which provides that "Congress shall have power  *  *  *  to regulate commerce with foreign nations, and among the several States and with the Indian tribes."

2. Article 1, sec. 10, par. 3, which provides that "No State shall, without the consent of Congress, lay any duty upon tonnage."

We shall, at the outset, disembarrass the case of several questions upon which we heard much learned argument, by laying down certain propositions which we consider clearly settled by the Supreme Court of the United States, to whose opinions on such subjects we yield our firm adherence:

1. The laws in controversy are, in no sense, "inspection laws," and can derive no support from that clause of the Constitution of the United States recognizing the right of the States to pass such laws, and to levy duties and imposts in execution thereof. The "inspection," "duties," and "imposts" intended by that provision referred exclusively to articles of merchandise and not to vessels. Gibbons vs. Ogden, 9 Wheat. 1, 203; People vs. Compagnie, 13 Reporter, 326.

2. So far as the exclusive power of the Congress to "regulate commerce" is concerned, that power is not infringed by the laws under consideration, *unless* the fees and charges imposed thereby are in the nature of a "duty on tonnage," in which case they would doubtless violate both the general reservation to Congress of the exclusive power to regulate commerce and also the special prohibition to the States to "lay any duty on tonnage." In other respects, the right of a State to provide for the health of its people by establishing quarantine laws,

and to subject vessels entering its ports to proper regulations as to inspection, detention, purification, etc., although necessarily affecting commerce, is, nevertheless, undisputed; subject, possibly, to the power of Congress to interfere and control it, in its discretion. Gibbons vs. Ogden, 9 Wheat. 203; Passenger Cases, 7 How. 414; Peete vs. Morgan, 19 Wall. 581.

3. If the fees and charges complained of be of the nature of a "duty on tonnage," the fact that they are levied under quarantine laws would save them from the prohibition of the Federal Constitution. Such duties cannot be levied, without the consent of Congress, and Congress has never consented, but, on the contrary, in its Act of 1799, recognizing the existing quarantine laws of the States, it interposed the expressed *proviso*, "that nothing herein shall enable any State to collect a duty of tonnage or impost, without the consent of the Congress of the United States thereto."

4. If the fees and charges be in the nature of a "duty," the fact that it is laid on the whole ship and not at a rate of so much *per ton*, would not, of itself, exempt it from the Federal prohibition. Steamship Co. vs. Port Wardens, 6 Wall. 31 ; State Tonnage Tax Cases, 12 Wall. 218

This elimination leaves open, on this branch of the case, the solitary question : Whether the fees and charges here involved are "duties" in the sense of the Constitution.

It is the well-established jurisprudence that there are many forced contributions which governments may exact from persons and property which are not considered as taxes, duties or imposts within the meaning or control of constitutional restrictions upon the power to levy the latter. Such are contributions provided for the construction of public works for the advantage of particular districts, like levees, drainage, pavements, etc., levied on property with reference to the supposed benefits derived by the property from the works; contributions provided to defray the expenses of building bridges, erecting causeways, or removing obstructions in a water-course, and like the light duty paid by all nations to the Danes; to be paid by such individuals only who enjoy the advantage; and fees or charges for services lawfully rendered, like wharfage, pilotage and port warden fees, to be paid by those who receive the services. State vs. Nav. Co., 11 Mart., O. S. 324; Crowley vs. Copley, 2 A. 329; Lafayette vs. Orphan Asylum, 4 A. 1; Wesley vs. Municipality, 9 Rob. 330; Draining Co. case, 11 A. 370; Levee Commrs. vs. Lorio, 33 A. 276; Matter of Mayor of New. York, 11 Johns. 80; Gibbons vs. Ogden, 9 Wheat. 235; Pilotage cases,

12 How. 312; Port Warden cases, 6 Wall. 31; Cannon vs. New Orleans, 20 Wall. 577; Packet Co. vs. St. Louis, 100 U. S. 423; City vs. Wilmot, 31 A. 65; Ellerman vs. R. R., 34 A. 703.

In the first of the cases above quoted, Chief Justice Martin said that the words, *impost, tax or duty*, as used in constitutions or laws, "must be confined to the idea which they commonly and ordinarily present to the mind ; exactions to fill the public coffers, for the payment of the debt and the promotion of the general welfare of the country"—and not to contributions as the supposed equivalent of benefits conferred or services rendered, like those above indicated.

It is apparent from the face of the laws here attacked, that the fees and charges complained of are demanded as compensation for labor performed, expense incurred and services rendered, directly in connection with the vessels, the necessity for which arises solely from the fact that such vessels, in the exercise of an undoubted right, yet voluntarily and in the pursuit of their own interests, choose to seek the port of New Orleans, well knowing that they cannot enter said port without first being inspected and, if necessary, purified in conformity with laws to that extent unquestionably valid. Can it be said that the rendition of these services, by virtue of which alone the vessel is enabled, lawfully, to proceed to the destined port, is not a service to the vessel?

It is said that it cannot be considered as a service, because the vessel does not regard it as such, but rather as a burden, and because she does not voluntarily seek or avail herself of it. As to the first point, the question would seem to be, not whether the vessel regards it as a service, but whether it is a service and whether she ought to regard it as such. It seems the plainest development of the primal duty, "*sic utere tuo, ut alterum non lædere*, that a vessel should seek and desire the performance of services, the object of which is to prevent the chance of her spreading disease and pestilence amongst large populations. She is under the plain obligation, moral as well as legal, to do everything to avoid such risk, and the service which enables her to perform this obligation would seem to be a service to her.

As to the second point that the services are forced and not voluntary, the reliance placed upon the decisions of the United States in the Wharfage and Port Warden cases seems not well founded. In those cases, there was no legal duty imposed on vessels to land at the wharves or to receive the services of the port wardens. They had the perfect right to decline these benefits and services, and the Court properly held that a State law exacting contributions for them, whether

used or not, was unconstitutional. But had it been the legal duty of vessels to land at a particular place in the port of New Orleans and had the city provided expensive wharves at such places, is it supposed that she would not have had the right to exact compensation for the use of the facilities thus afforded, although vessels landing at the port would have had no option as to accepting the use of them?

Finally, it is claimed that the services rendered under these quarantine regulations are for the benefit of the people of the city and State and not for that of the vessel. No doubt that is true. It is equally true that the object of the city in building wharves was to benefit its own people, trade and commerce.

We deem it unnecessary to consider more at length the objections which have been forcibly urged against the theory that the services in question are rendered to the vessel in such manner as to justify the exaction of compensation therefor. What we have said sufficiently expresses our views on the subject; and while the question is not free from difficulty even to our own minds, we are confirmed in our course by the reflection that it leaves the avenue open for correction of any error which we may commit, by appeal to the Supreme Court of the United States; whereas, if we should err in the opposite direction, the defendants would not be entitled to that remedy.

The broad proposition of plaintiff that, in the exercise of the right to establish quarantine systems, the States are bound to bear all the expenses thereof, and cannot throw the burden in any manner, or to any extent, upon commerce, has certainly not yet received the endorsement of the Supreme Court of the United States.

In the Passenger Cases, Mr. Justice Wayne, summing up, in his separate opinion, his view of what the *entire Court* meant to decide, included, amongst other propositions, the following: "That the States may, in the exercise of their police power, pass quarantine and health laws * * * and may impose penalties for the violation of the same * * * and may, in the exercise of such police power, without any violation of the power in Congress to regulate commerce, exact from the owner or consignee of a quarantined vessel * * * such fees as will pay to the State the cost of detention and of the purification of the vessel, cargo and apparel of the persons on board." Nothing in any of the several opinions rendered in the case clashes with this statement or indicates any dissent therefrom. Passenger Cases, 7 How. 414.

In the case of Peete vs. Morgan, strenuously relied on by plaintiff, the Court, after recognizing the right of the States to pass quarantine

laws, said: "It is evident that the power to establish quarantine regulations cannot be executed without the State possesses the means to raise a revenue for their enforcement, but it is equally evident that the means used for this purpose must be of such a character as the restrictions imposed by the Federal Constitution upon the taxing power of the State authorized."

It cannot be doubted that the Court meant to sanction the right of a State, in its quarantine laws, to "raise a revenue for their enforcement," in *some* way connected with their execution. To suppose that "the means to raise a revenue" referred to as implied in the power to establish quarantine, meant only the ordinary powers of taxation of the State's own citizens and property, would be to accuse the Court of uttering a mere inanity. We can conceive of no other means which could have been in view, except just such exactions of compensation for services as are provided in these laws of Louisiana.

As far as appears from the statement and opinion in Peete vs. Morgan, the charge there in question was a clear and simple duty on tonnage, levied by the State without any reference to services rendered, and we think it has no application to the instant case except in the clause above quoted.

We find nothing inconsistent with the foregoing views in the proviso inserted in the Act of Congress of 1799. That was an act empowering and directing the officers of the General Government to conform to and assist in the execution of the quarantine laws of the States. All or most of the seaboard States had such laws, the nature and mode of execution of which must have been known to Congress. Those laws contained provisions authorizing the exaction of fees and charges for inspection, disinfection, etc., entirely similar to those in the laws of Louisiana. For instance, the law of South Carolina, passed as early as 1759, forbade vessels bound for Charleston from infected ports, from passing Fort Johnson until visited, inspected and certified by one of certain named physicians, and obliged the owner or master "to pay such physician a fee of £7 10s, current money, and moreover, the expense of the boat and hands to carry down such physician to visit the said vessel and to bring him up again to Charleston."

Nothing in the Act of Congress reprobates such charges, and it must be supposed that the proviso forbidding the levy of "any duty of tonnage," did not refer to charges for service of this character, but was intended to shut out any implication of a consent by Congress to the imposition of tonnage duties proper.

Railroad and Steamship Company vs. Board of Health.

There is nothing in the laws of this State or in their execution as disclosed by the evidence indicating the purpose of levying a forbidden tonnage duty under the guise of charges for service.

The services are shown to be actually rendered and the charges are not excessive to a degree sufficient to authorize judicial interference. It is proved that the revenue derived therefrom is devoted exclusively to quarantine purposes, and, in no year, has it been sufficient to defray the quarantine expenses.

The suggestion that the recognition of the right of the State to lay such charges, leaves the power without limitation and thus endangers commerce, is unfounded. The charges must be proportioned to the services, and, if excessive, may be subjected to judicial control, and, moreover, Congress may at any time intervene and control the entire matter,

We, therefore, hold that the plaintiff is not entitled to the relief asked.

As we maintain the validity of the Act 69 of 1882, the constitutional objection to the act of 1870, (Rev. Stat. 3042), on the ground of discrimination between the ports of different States, does not arise, the law in that particular being repealed by the act of 1882.

The claim that the act contravenes Articles 48 or 30 of the Constitution of the State, is without foundation.

The act is neither *local* nor *special*, but is of the most general character, intended for the benefit and protection of the entire people of the State.

Neither does it *revive* or *amend* any prior law. It is an original and independent statute, repealing such portions of prior laws on the same subject matter, as are inconsistent with it.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now adjudged and decreed that the injunction herein granted be now dissolved and that plaintiff's demand be rejected at its cost in both courts.

Rehearing refused.

This case is pending on a Writ of Error in the Supreme Court of the United States.

REPORTER.