**530**

STATE

v.

Brian E. TURNBAUGH.

No. 95–625–C.A.

Supreme Court of Rhode Island.

Dec. 22, 1997.

Aaron Weisman, Asst. Attorney General, Michael L. Rubin, Special Asst. Attorney General, for Plaintiff.

Leonard L. Bergersen, Peace Dale, Lauren Jones, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and SHEA (Ret.), JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on an appeal by the state from a judgment entered in the Superior Court dismissing a complaint brought against the defendant, Brian E. Turnbaugh, for failing to register and to pay a registration fee upon a vessel owned by the defendant and named the *All Maine Woman.* The defendant was a resident of the State of Rhode Island at all times relevant to this controversy. He had further enrolled his vessel with the appropriate federal agency, had obtained a federal fisheries permit, and was licensed as a commercial fisherman by the State of Rhode Island.

He declined to register his motor-powered vessel, which is in excess of fifty feet in length with a gross tonnage of forty-four tons and net tonnage of thirty tons. Pursuant to G.L.1956 § 46–22–4 the registration fee for a vessel the size of the *All Maine Woman* would be $300.

The requirement of registration and payment of the fee would extend to any boat that "is to be operated on the waters of this state in excess of ninety (90) days" pursuant to § 46–22–6(1). Further, the penalty for failure to register a boat such as that owned by defendant, which would be operated on the waters of this state in excess of ninety days, is a fine of $100 for each violation. *See* § 46–22–19(1). The offense is denominated as a misdemeanor.

Since defendant admittedly did not comply with the provisions of § 46–22–4, he was charged with a misdemeanor. When that case was presented to the Superior Court, he moved to dismiss on the ground that the statute that he allegedly violated was invalid as pre-empted by federal legislation, constituted an impermissible burden upon interstate commerce, and was also prohibited as the levy of a tonnage-tax licensing fee imposed upon the vessel solely for the privilege of entering into and remaining upon the waters of this state. A justice of the Superior

Court held the statute invalid on all the foregoing grounds and consequently dismissed the complaint. From this judgment of dismissal the state filed a timely notice of appeal.

Although the parties have presented arguments in regard to all issues raised by defendant in the Superior Court, this court affirms the judgment of the Superior Court solely on the ground that the purported registration fee authorized by § 46–22–4 constitutes a tonnage tax prohibited by Article I, section 10, clause 3, of the Constitution of the United States. This provision forbids the laying of a duty of tonnage by any state without the express permission of the Congress. Not only has Congress not granted permission to the states to levy a tonnage tax but it has specifically forbidden such taxes to be levied on federally documented or enrolled vessels in 46 U.S.C. appendix § 122, which reads as follows:

> "No vessel belonging to any citizen of the United States, trading from one port within the United States to another port within the United States, or employed in the bank, whale, or other fisheries, shall be subject to tonnage tax or duty, if such vessel be licensed, registered or enrolled."

This constitutional prohibition was construed by the United States Supreme Court in the *State Tonnage Tax Cases,* 79 U.S. (12 Wall.) 204, 20 L.Ed. 370 (1871), in which a statute of the State of Alabama that purported to impose a tax on all steamboats, vessels, and other water crafts plying the navigable waters of the state at the rate of $1 per ton of the registered tonnage thereof was in issue. The penalty for failure to pay the tax was the seizure of the vessel or vessels owned by the delinquent party. *Id.* at 211, 20 L.Ed. at 373. The plaintiffs, who were citizens of Alabama doing business in Mobile, paid the taxes to avoid seizure and brought suit for a refund. *Id.* The Alabama Supreme Court denied relief, and the Supreme Court of the United States on writ of error declared the statute violative of the Federal Constitution. *Id.* at 220, 20 L.Ed. at 376. In doing so, the Court recognized that a state might levy taxes upon ships and vessels owned by the citizens of the state "*as property, based*

*on a valuation of the same* as property" but went on to say that "it is equally clear and undeniable that taxes levied by a State upon ships and vessels as instruments of commerce and navigation are within that clause of the instrument which prohibits the States from levying *any duty of tonnage,* without the consent of Congress; and it makes no difference whether the ships or vessels taxed belong to the citizens of the State which levies the tax or the citizens of another State." 79 U.S. (12 Wall.) at 213–14, 20 L.Ed. at 373.

In the foregoing cases the tax was clearly measured by tonnage. However, it has been recognized by the Supreme Court that the prohibition against tonnage duties includes "all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port." *Clyde Mallory Lines v. Alabama,* 296 U.S. 261, 265–66, 56 S.Ct. 194, 196, 80 L.Ed. 215, 218 (1935) (citing *Southern Steamship Co. v. Portwardens,* 73 U.S. (6 Wall.) 31, 18 L.Ed. 749 (1867)); *Cannon v. New Orleans,* 87 U.S. (20 Wall.) 577, 581, 22 L.Ed. 417, 419 (1874); *State Tonnage Tax Cases,* 79 U.S. (12 Wall.) at 213–14, 20 L.Ed. at 373. The Court in *Clyde Mallory Lines* went on to add that a tonnage-tax prohibition does not extend to charges made by state authority, even though graduated according to tonnage for services rendered to and enjoyed by the vessel, such as pilotage or wharfage, or as in that case a charge levied to cover the cost of policing a harbor so as to ensure the safety and movement of vessels. 296 U.S. at 266–67, 56 S.Ct. at 196, 80 L.Ed. at 219.

■ In the case at bar the state argues vigorously that under the statute that was in effect in 1993 when defendant committed the alleged misdemeanor, a portion of the fees collected were used for the purpose of reimbursing the state for maritime and environmental services that may confer benefit on defendant's vessel together with all other vessels. The statute at issue was amended by P.L.1992, ch. 133, art. 16, § 1, which caused § 46–22–18 to read in pertinent part as follows:

"(2) For fiscal year 1993, all monies collected under the provisions of this chapter shall be allocated, distributed and used as follows: (a) *Subject to approval of the General Assembly,* amounts sufficient to fully fund:

(i) Expenses of the department of environmental management incurred in the administration and enforcement of this chapter;

(ii) Expenses of boating safety, boating safety services and programs, boating education, marine patrols, enforcement training programs, promotion and publicity relating to boating and boating safety and equipment related to boating safety;

(iii) Grants for the purpose set forth in subsection (ii) above as well as grants to cities and towns for the purposes of the implementation and carrying out their harbor management plans[;]

(iv) Maintenance and improvement of recreational and navigational facilities relating to boating safety; including, but not limited to the installation, improvement and maintenance of aids to navigation, and support facilities; and

(v) Expenses incurred in cooperation with the government of the United States in boating and boating safety matters.

(b) The monies remaining after disbursements for department activities specified in section 46–22–18(A) that are collected from in-state residents shall be paid annually to the cities and towns of the state in lieu of a property tax on motorboats. The portion of the total amount to be paid to each city and town each year under this subsection (b) shall be determined in accordance with a formula under which each city and town shall receive a proportionate share of the total amount to be distributed under this subsection (b) such proportionate share to be determined by a ratio, the numerator of which shall be the total annual fees paid under section 46–22–4 with respect to motorboats registered to persons residing in such city or town and the denominator of which shall be the total annual fees paid with respect

to all motorboats registered in all cities and towns of the state.

(c) Fees generated from motorboats registered to non-residents of Rhode Island shall be allocated, distributed and used in accordance with section 46–22–18(a) above.

(d) From the monies specified in section 46–22–18(b), the town of Westerly shall annually receive a sum equal to the greater of eighty thousand dollars ($80,000) or the amount it would receive under the above formula; for that same period the town of New Shoreham shall annually receive a sum equal to the greater of twenty-two thousand nine hundred and sixty eight dollars and fifty one cents ($22,968.51) or the amount it would receive under the formula; and the Westerly fire district shall annually receive a sum equal to twenty three hundred dollars ($2,300). Payments to cities and town [*sic*] shall annually include these specified amounts, regardless of net allocations to cities and towns, after sufficient funds are allocated under section 46–22–18(a) above." [1] (Emphasis added.)

The state argues that the benign purposes set forth in the 1992 amendment of the statute would take this registration fee out of the tonnage-tax prohibition as suggested in *Clyde Mallory Lines v. Alabama, supra.* However, it should be noted that any funds collected under the provisions of this chapter were required to be allocated, distributed, and used subject to the approval of the General Assembly. Thus this alleged restricted receipt account was entirely subject to being used as a general-revenue measure and not merely for the purpose of providing services to boats, boaters, and navigational improvements.

◼ The state further argues that insofar as this registration statute affects defendant, a resident of the state, it is in effect a property tax of the type that passed constitutional muster in *Wiggins Ferry Co. v. City of East St. Louis,* 107 U.S. (17 Otto) 365, 2 S.Ct. 257, 27 L.Ed. 419 (1883). In *Wiggins*

---

1. General Laws 1956 § 46–22–18(1)(a) provided that one-half of such funds collected shall be

spent for environmental, boating-safety, recreational, and navigational purposes.

the Supreme Court approved of a license fee levied on a ferry keeper for the privilege of carrying on ferry trade between the city of East St. Louis, Illinois, and the State of Missouri. *Id.* at 373, 2 S.Ct. at 263–64, 27 L.Ed. at 422. The Court emphasized that the state or its municipality had the power to license trades carried out by its residents. *Id.* at 375, 2 S.Ct. at 264–65, 27 L.Ed. at 423. As an example the Court suggested that draymen may be compelled to pay a license tax on every dray owned by them, hackmen on every hack, and tavern keepers on their taverns in proportion to the number of rooms they kept for the accommodation of their guests. *Id.* Similarly the Court observed that a state was not prohibited from taxing the keeper of a ferry upon the boats that he employs. *Id.* at 375–76, 2 S.Ct. at 264–66, 27 L.Ed. at 423. The state argues that the approval of such a tax would support the registration fee in the case at bar. The answer to this argument is that the Supreme Court in the *Tonnage Tax Cases* as well as in *Wiggins* has always clearly recognized the authority of a state to tax a documented vessel or any vessel as property but has steadfastly refused to validate taxes imposed upon any vessel whether measured by tonnage or any other device for the mere entry into, plying, or lying on the waters of a state.

In the case at bar the registration fee or tax based on the length of the vessel is not a tax on ownership or a property tax of any kind. It is a fee imposed on any vessel, whether owned by a resident or a nonresident, which is operated on the waters of this state in excess of ninety days. In our opinion these circumstances render the registration fee a classic form of tonnage tax specifically prohibited by the Constitution of the United States as well as by congressional statute.

Since we hold the registration fee to be a tonnage tax and therefore invalid, it is unnecessary for us to reach the other issues raised by the defendant before the Superior Court and challenged by the state before this court.

For the reasons stated, the appeal of the state is denied and dismissed. The judgment of the Superior Court is affirmed. The pa-

pers in the case may be remanded to the Superior Court.

GOLDBERG, J., did not participate.